EBER CHASE *vs.* EDWARD D. PERRY & others.

Bristol. Oct. 26, 1881. — May 23, 1882. MORTON, C. J., W. ALLEN & C. ALLEN, JJ., absent.

Where the existence of a right of way by necessity over an alleged servient estate is in dispute, and is to be shown by the use of it by those who have had occasion to take crops from the dominant estate, evidence of the whole mode of such use is competent.

TORT for breaking and entering the plaintiff's close in Dighton, and trampling upon and destroying corn, potatoes and grass growing thereon. The defendant Perry justified under a right of way by necessity across the plaintiff's land to and from his own land, and the other defendants justified as servants of Perry. Trial in the Superior Court, before *Allen*, J., who allowed a bill of exceptions, in substance as follows:

A plan was introduced at the trial for the purpose of showing the relative position of the plaintiff's and Perry's lot, the way as claimed by the defendants, and the highway.

Perry's lot was a salt marsh containing about an acre and a half. Its annual crop was from one to two tons; and a portion of the lot was woodland.

The defendants offered evidence tending to show the existence of an ancient cartway leading from Perry's premises across the plaintiff's premises in a certain line.

The defendants contended that the way had been anciently located in this line of travel, and that they were travelling in this way at the time of the alleged trespass; and offered evidence tending to show that the owners of the Perry lot and their servants and employees, from the earliest recollection of the witness down to the present time, had always passed and repassed between said highway and lot in this particular way, whenever they had occasion to go or come from said lot; there was no evidence that any one of them ever went in any other direction.

The defendants' evidence tended to show that this way was used nearly every year by the owners of the Perry lot from about 1824 to 1834; and, after that, only occasionally, they generally selling the grass to different persons.

The plaintiff contended, that there was no ancient cartway; that if the defendants had any way by necessity through his lot, it had never been defined or located, and was only a right to go in such place and direction as the plaintiff might point out, whenever there was occasion to cross said premises; and he called several witnesses, who testified that they had for several years purchased the standing grass on Perry's lot, and that there was no visible cartway leading across the plaintiff's lot; and they were also permitted to testify, against the defendants' objection, that, in carting hay from said lot, they had crossed the plaintiff's lot in different places and directions, from year to year, in such way and manner as the plaintiff requested, and that they had paid the plaintiff certain sums of money for crossing said premises. The evidence tended to show that this had been the course of things for twenty-five years prior to about 1876. There was no evidence that any of these acts were done by the direction or with the knowledge or consent of any of the owners of the Perry lot. To the admission of this evidence the defendants excepted.

The defendants, on cross-examination of the plaintiff, and before the introduction of the testimony excepted to, asked him how the grass had been taken off of the Perry lot during the thirty or more years that he had known the premises, and asked him to name the persons who had carted it off from time to time, and to tell what way they took it off. The plaintiff, in reply to these questions, named the persons who had taken it off, and told in what directions and by what ways they took it, which were usually across the plaintiff's lot. The testimony afterwards admitted and excepted to was in referenee to the persons named in this answer of the plaintiff.

The jury returned a verdict for the plaintiff; and the defendants alleged exceptions.

*H. J. Fuller*, for the defendants.

*W. H. Fox*, for the plaintiff.

LORD, J. The bill of exceptions shows no error in the admission of evidence. The action is for tort in passing over the plaintiff's planted land. The answer of Perry justifies his passing over in a way which he claims to have been a regularly located way of necessity. The other defendants justify as the servants of Perry in a proper use of such way.

In support of the defendants' answer, evidence was offered tending to show that very many years ago there was a way across the plaintiff's lot, where Perry claimed the way to be; there was evidence also tending to show that for almost every year from 1824 to 1834 those who at that time owned the Perry lot passed across the plaintiff's land in gathering the crops from the Perry lot, and there was also a plan introduced showing the relative positions of the plaintiff's lot, the Perry lot, and the highway, and the way as claimed by the defendant. This evidence was competent evidence, but by no means conclusive, of a right of way by necessity. The relative position of lots is always an element in determining whether there be a right of way which the law designates as a right by necessity, but it is not conclusive evidence of such way.

But such right of way is not a right to go indiscriminately over any part of the land of the grantor, but a certain, definite, fixed way, defined either by the agreement of the parties, or by the designation by the grantor, or, upon his failure to locate, by

the grantee. *Jones* v. *Percival,* 5 Pick. 485. *Nichols* v. *Luce,* 24 Pick. 102. *Russell* v. *Jackson,* 2 Pick. 574, 578. *Wynkoop* v. *Burger,* 12 Johns. 222. Washb. Easem. 167.

It is probable, though the bill of exceptions indicates nothing of the kind, that the two lots might have once had a common owner, and perhaps we may deem it probable, although this does not appear in the bill of exceptions, that the Perry lot was first sold. The plaintiff denied that there was a way of necessity, and contended that, if such a way was ever attached to the Perry lot, it had never been located. It does not appear by the bill of exceptions what instructions were asked in reference to the mode in which a right of way by necessity could be acquired, nor the mode of its location, nor whether it could by any means be extinguished, nor in what manner it could be extinguished; and it is therefore to be presumed that proper instructions were given upon all those subjects, and that the evidence which was admitted was limited by the presiding judge to the subjects on which it was competent. Apparently, both parties relied for their respective claims wholly upon the mode in which the crops were taken from the Perry lot, from the time longest remembered by any witness, to the present. The mode in which the crops had been taken, by whom and under what circumstances, and by what route, during all this period, was therefore competent evidence, when tendered by either party. How far inferences might be drawn from that testimony by the jury, whether it was sufficient to establish a way by necessity or not, was wholly a question for the jury, under proper instructions from the court; and nothing appears to show that such instructions were not given. The fact that for the last forty-five years the crops had been generally taken away by some person other than the owner of the land, was competent in a variety of aspects. If there was a way appurtenant to the Perry lot, and the product of the lot was from one to two tons of salt grass, the jury might well consider whether Perry would have pointed out to the purchaser such way and authorized him to go in it, or whether he would leave the purchaser to solicit or purchase a privilege to take off such crop, as he could best bargain for it; or, in other language, did he enjoy that lot and the income to be derived from it in the mode and to the extent to which one would who had an absolute right in a way to it.

In making this suggestion, we do not mean to decide that this is the true ground for the competency of the evidence. From the bill of exceptions it is apparent that the right of way was to be shown by the use of it by those who had occasion to take crops from the Perry lot. The whole mode of use, therefore, was competent.                                          *Exceptions overruled.*