JOHN STARKIE *vs.* WILLARD RICHMOND.
JAMES GREEN *vs.* SAME.

Worcester.    October 1, 1891. — January 6, 1892.

Present: ALLEN, HOLMES, KNOWLTON, MORTON, & BARKER, JJ.

*Obstruction of Way — Mandatory Injunction — Final Decree — Report — Waiver — Estoppel.*

It is for the court, in the exercise of a sound discretion, to determine whether a permanent obstruction in the use of an easement entitles the aggrieved party to a restoration of the former situation, and a mandatory injunction will not be issued when it will operate inequitably and oppressively, nor when there has been unreasonable delay by the party seeking it in the enforcement of his rights, nor when the injury complained of is not serious or substantial, and may be readily compensated in damages; while to restore things as they were before the acts complained of would subject the other party to great inconvenience and loss.

*It is doubtful* whether a right to pass, not in a particular line, but everywhere over the premises over which the right is claimed, may be acquired by prescription as a right of way.

On the issue whether the plaintiff had acquired a right to use as a passageway the entire area of certain premises before the defendant purchased the same, where it appeared that the parties had substituted another way therefor, and had continued to use the substituted way for many years without objection, it was *held* that equity would not interfere to compel the defendant to remove a permanent building erected by him on the premises.

Where, on a bill in equity for a mandatory injunction for the removal of an obstruction from a way, the presiding justice, as the parties could not agree, appointed, without affording them a hearing, a commission to determine the location and the width of the way, the parties being informed thereof, but making no objection, it was *held* to be too late for the plaintiff to make objections after the commissioners' report had been made, and a final decree had been entered.

TWO BILLS IN EQUITY, filed in the Superior Court in January, 1889, to enjoin the defendant from interfering with a way in

the city of Worcester, and to compel him to remove a building and fences therefrom. Hearing before *Aldrich,* J., who, after the entry of a final decree in each suit, reported the cases for the determination of this court, and directed a stay of further proceedings until they should be determined. The material parts of the reports are as follows.

The plaintiffs were the owners of real estate abutting on Layard Place, so called, in the city of Worcester, a way running easterly from Main Street about one hundred feet, of varying width, averaging about nine and one half feet, and then turning and running northerly by the premises of the plaintiffs with a width of twenty feet. The situation of the premises is shown on a plan given on the next page. In 1834, the land over which the way ran, and on both sides thereof, was owned by one Davis; and the land on the north side of Layard Place, at the corner of Main Street, was occupied by a building known as the Slater Block, extending about thirty-six feet in depth from Main Street, and forming to that extent the northern boundary of the way. Beyond the southeast corner of the Slater Block the north line of the passageway was not marked or defined by any structure, but at that time and for more than twenty years prior thereto, Starkie, as tenant, and all other persons who used the way, had travelled over the open space which extended eastward from the rear of the Slater Block in a northeasterly direction around the corner of the Slater Block to a dye-house occupied by Starkie. On the 1st of October, 1872, Davis was the owner of the Slater Block and the open space in the rear thereof, as above described, and on that day he conveyed to the plaintiff Starkie certain other real estate abutting upon Layard Place, together with a right of way in said passage to and from Main Street, as said way then existed. The predecessors in title of the plaintiff Green derived their right by a conveyance from Davis in 1834, describing a tract of land on the east side of Main Street, and adding : " Also I give and grant unto the grantees, their heirs and assigns, a right of passageway entering in at the south end of the store now occupied by Elijah A. Brigham [which was the south store in the Slater Block] and passing in the rear of my buildings, between my store and barn, to the rear of their store as it now is, and to the rear of it as it shall

be extended in depth, so as to be sixty feet deep, and it is further agreed by the parties to this deed, in case the grantor, his heirs or assigns, should erect new buildings on Main Street, the passageway might be removed further east. . . . It is understood that the above passageway is to be a free and open passageway, convenient for teams to pass and repass to and from the rear of the grantee's store as the store now is, or as it may hereafter be, unless the depth of said store exceed sixty feet." Teams in going to and from the premises of the plaintiff Green were accustomed, without objection from the owner of the area in the rear of the Slater Block, to pass over any part of it, turning northerly after passing the southeast corner of the Slater Block, instead of keeping on in a more easterly course and turning northerly within the limits of the twenty-foot passageway.

In 1873, Davis conveyed to one Ames the lot containing the Slater Block, bounding it upon the south and east by Layard Place; and in October, 1877, Ames conveyed the southern portion of this lot to the defendant. In the summer of 1875 Ames built a picket fence in the rear of the Slater Block, which stood until after the deed to the defendant, but there was no evidence that the fence was built for the purpose of indicating or defining the north line of the passageway, unless the existence of the fence constitute such evidence. In 1878 the defendant removed the Slater Block and the fence, and erected the building now standing on the north side of Layard Place. While he was engaged in that work, the wife of the plaintiff Starkie, who was authorized to represent him, went to the defendant as soon as the work had progressed enough to show where the walls were to be, and told him that he had gone over the passage; to which the defendant replied that his deeds were all right; whereupon the plaintiff Starkie's wife said that her husband's deeds were before his, and that her husband understood that he had nearly ten feet of passageway. The defendant's new building extended east from Main Street 80.2 feet, leaving the passageway between it and the building on the south side of Layard Place of a uniform width of nine feet and four inches. The area between the east end of Richmond's new building and the twenty-foot passageway was left open from the

completion of the building in 1878 until 1887, during which time teams passed and repassed over the open area around the southeast corner of the building to and from the premises of the respective plaintiffs. In 1887 the defendant built a fence extending from the southeast corner of his building 19.9 feet easterly on the same line, and then turning at a right angle and running northerly and enclosing said open area. In 1887, prior to the erection of the fence, the plaintiff Green and the wife of the plaintiff Starkie had several interviews with the defendant in reference to paving the passageway from Main Street, and also the area in the rear of and up to the defendant's new building, which was done, the expense thereof being shared by the plaintiffs, the defendant, and others who had rights in the passageway. This fence was erected by the defendant in consequence of a controversy between him and Mrs. Starkie as to the condition in which the area forming the back yard of the new building was kept, and it enclosed part of the paved surface. While the defendant was erecting his building in 1878, the plaintiff Green was abroad, and did not know of it until his return after its completion. He did not know that the way had been narrowed till some years afterward, although he might at any time have ascertained it by measurement. Except for the conversation above referred to between the defendant and Mrs. Starkie, at the time when the defendant's building was in process of erection, neither of the plaintiffs took any steps toward the removal of the defendant's building or fence, or to recover damages for interference with the way, until the commencement of these suits, nor was any further complaint made by either plaintiff until after the building of the fence in 1887.

The presiding justice found that the defendant's new building stands partly on land over which teams were accustomed to pass in the rear of the Slater Block; and that the defendant by his building near the line of Main Street had narrowed the passageway thirty-seven hundredths of a foot, and at the actual line of Main Street over forty-six hundredths of a foot; and that he had widened it two tenths of a foot where the southeast corner of the Slater Block stood. He refused, however, to order the removal of the building, for the following reasons. First, that the defendant had the right to occupy his rear lot with a per-

manent building, leaving a passageway convenient for teams to pass and repass to and from the premises of the plaintiff Green, and leaving a passageway for teams to pass and repass to and from the premises of the plaintiff Starkie, substantially and for all practical purposes such as was conveyed to Starkie by Davis by his deed of 1872, as he found would be done when a post and fences and other obstructions were removed, as ordered in the final decrees heretofore filed in these cases. Secondly, because the plaintiffs, long after they knew in what condition the defendant's building left the passage, requested the defendant to unite with them and others in causing the passageway to be concreted and paved, as it then was, which the defendant did, as hereinbefore stated. Thirdly, because of the long acquiescence of the plaintiffs in the way as it was after the said new building was erected, taking no steps for its removal, until the commencement of these suits, and making no complaint until after the building of said fence in 1887. Since the filing of the final decrees, the defendant has removed the fence and post, and all other obstructions to the way, in conformity with the decrees, so that the passageway is now in width and form substantially as it was during the nine years from 1878 to 1887.

After the hearing and before the entry of the final decrees, the presiding justice called the counsel together, the plaintiff Green being also present, and informed them orally that he had determined that the defendant had encroached upon the north side of the way by his building and fence, and that, if the parties found, on conferring together, they could not come to an agreement in the matter, he should employ a surveyor, and with his aid mark on the surface of the earth the limits of the way, so as to establish them for all time. Later, having been informed that the parties could not agree, he appointed a commission of three experienced men, one of whom was a civil engineer and surveyor, " to determine the location of, and the width for, a convenient passageway for teams, over a passageway called Layard Place, leading easterly from Main Street in Worcester." This commission was selected by the presiding justice without a hearing being given on the question of its constitution or appointment, but the parties were informed of its appointment, and the plaintiff Green was personally told by him that the

commissioners would meet at the way at an hour named, and mark out the way, and Green went to the place at that hour. There were but two of the commissioners present, and they were inspecting the way. At this same meeting a son of the plaintiff Starkie was present. There was no evidence, however, that he was authorized to act as his representative. Starkie did not see the commissioners afterwards, nor was he notified of nor did he share in their later inspections of the premises, or in their deliberations, nor know of their conclusions, or the terms of their appointment, except, as above stated, that they would meet and mark out the way, until their report was filed and the decrees in the cases entered. Since the final decrees were filed, the plaintiff Green has informed the presiding justice that he did not express to the commission his wishes in relation to the location of the way. Green did not see them afterwards, nor was he notified of nor did he share in their later inspections of the premises, or in their deliberations, nor know of their conclusions, or the terms of their appointment, except, as above stated, that they would meet and mark out the way, until their report was filed and the decrees in the cases entered. The plaintiffs made no objection to the appointment of said commission until after the filing of the final decree in each case.

The final decrees were based upon the evidence introduced at the hearing, upon the view of the premises taken by the court, as aforesaid, and upon the report of said commissioners.

*F. P. Goulding & R. Hoar*, for the plaintiffs.

*W. S. B. Hopkins*, (*F. B. Smith* with him,) for the defendant.

MORTON, J. When the defendant began the erection of his building he was notified by the plaintiff Starkie that the foundation was on the passageway. The defendant, relying upon his own deeds, made no change, and proceeded with the building. The court found at the trial that the building encroached upon the way. If Starkie, upon discovering the trespass, had applied seasonably to the court, the defendant might, perhaps, have been compelled to remove his building from the way. *Linzee* v. *Mixer*, 101 Mass. 512. *Tucker* v. *Howard*, 128 Mass. 361.

He did not do that. He lived there and carried on business there, knew the condition of things, and he and others who had

occasion to go to and from his premises used the way; but from 1878, when the building was erected, till 1887, when the fence of which he complained was built, he took no steps towards the removal of the block, or to recover damages, or to assert his rights. He was not only passive when he should have been active, but he was active when he should have been passive. During the latter part of the time he had several interviews with the defendant about paving the passageway from Main Street, and the area in the rear of the defendant's block, and he, with the defendant and others interested, paved the same at their joint expense up to the block, without any objection, so far as appears, that it encroached on the way. With the exception that he was abroad when the block was built, and did not know till some years after that the way was narrowed, though he might readily have ascertained it, what has been said as to Starkie will apply to Green. In addition to this, it is found by the presiding justice in both cases, that the fence, post, and other obstructions which the defendant was directed by the final decrees to remove, have been removed by him, and that the passageway is now in width and form substantially as it was from 1878 to 1887. The presiding justice, in anticipation of these removals, further found that, when they were made, there would exist in the case of Starkie a passageway to and from his premises, substantially and for all practical purposes such as was conveyed to him by the Davis deed in 1872; and in the case of Green, that there would be a passageway convenient for teams to pass and repass to and from his premises. This was what the deed of Davis to the predecessors in title of Green, in 1834, called for.

In view of these facts, we think that the refusal of the presiding judge to order the removal of so much of the building as stood upon the way was correct. It is not every case of a permanent obstruction in the use of an easement that entitles the aggrieved party to a restoration of the former situation. Each case depends on its own circumstances. It is for the court, in the exercise of a sound discretion, to determine in such instances whether a mandatory injunction shall issue. It will not be issued when it appears that it will operate inequitably and oppressively, nor when it appears that there has been unreasonable delay by the party seeking it in the enforcement of his rights,

nor when the injury complained of is not serious or substantial, and may be readily compensated in damages, while to restore things as they were before the acts complained of would subject the other party to great inconvenience and loss. 2 Story Eq. Jur. 959 *a.* Kerr on Injunctions, (1st Am. ed.) 231. *Royal Bank of Liverpool* v. *Grand Junction Railroad*, 125 Mass. 490. *Lewis* v. *Chapman*, 3 Beav. 133. *Gaskin* v. *Balls*, 13 Ch. D. 324. *Aynsley* v. *Glover*, L. R. 18 Eq. 544. It is plain that all these elements exist in this case.

In the next place, the plaintiffs contend, as we understand them, that prior to the defendant's purchase of the premises they had acquired a right to use the entire area in the rear of the Slater Block as a way. There are several objections to this claim. In the first place, it may be doubted whether, notwithstanding what is stated as to the extent of the use, the presiding justice, in his finding that the defendant had a right to occupy the rear lot, has not settled the fact as to the right of the plaintiffs to use it for a way against them. Again, it may also be doubted whether, so far as that way depends on prescription, the plaintiffs could prescribe for such a way as they claim. A way imports a right of passing in a particular line, and not everywhere over the premises over which it is claimed. *Jones* v. *Percival*, 5 Pick. 485. *Nichols* v. *Luce*, 24 Pick. 102, 104. *Chase* v. *Perry*, 132 Mass. 582. Washburn on Easements, (2d ed.) 93, 160. Again, the character of the use was such, in the present instance, that it may well be presumed to have been by the sufferance of the defendant and his predecessors in title. Still further, the deed under which the plaintiff Green and his grantors acquired title from Davis, the former owner of the estate, in effect provided that the way might be carried farther east as changes in the Slater Block property required ; and even if there had been a right of way from the southeast corner of the Slater Block across the rear lot, the parties in interest in 1878 substituted, as they clearly had the right to do, the present way for it, and used the substituted way without objection till the erection of the fence in 1887. See *Pope* v. *Devereux*, 5 Gray, 409. We think, therefore, if the statement " the defendant had the right to occupy his rear lot with a permanent building " be regarded as a ruling of law based on the facts stated and found in the report, that it was clearly right.

Lastly, the plaintiffs insist that the presiding justice had no power to appoint the commission to mark out on the surface of the earth the location and width of a convenient passageway for teams, or to use its report in aid of the final decrees. It is to be observed that the objection was not taken till after the entry of the final decrees, from which the plaintiffs appealed; and, though the cases come here by the report of the presiding justice, that fact does not enlarge the right of the plaintiffs to object to what was done. *Denny* v. *Conway Ins. Co.* 13 Gray, 492. *Kennedy* v. *Owen*, 131 Mass. 431. *Butterworth* v. *Western Assurance Co.* 132 Mass. 489. *Hodgkins* v. *Price*, 137 Mass. 13. The cases must stand, we think, very much on the ground that they would have stood on if there had been an application to the Superior Court to vacate the decrees because of error, as matter of law, upon the stated facts on the part of the justice who entered them. It is manifest that the appeal of the plaintiffs would only bring to this court the question whether the decrees were warranted by the frame of the bills, and about that there can be no question. It appears that, after the hearing, the presiding justice called the parties together and informed them that he had determined that the defendant had encroached on the north side of the way by his building and fence, and that if they could not come to an agreement he should employ a surveyor, and mark out on the surface of the earth the limits of the way, so as to establish it for all time. The plaintiffs did not except or object to this. We think they must be held to have acquiesced in the course which the justice proposed to pursue in case they and the defendant could not agree. Later, the parties informed the justice that they were unable to agree, and he thereupon appointed the commission in question. No hearing was given by him on the question of its constitution or appointment. But the parties were informed of the appointments after they were made, and the plaintiffs did not object or except to what had been done. Green was told by the court that the commissioners would meet at the way at a certain hour to mark out the way, and he was there at the time named and made no objection. Owing to the sickness of one of them, only two of the commissioners were present. Starkie lived on the ground, and a son of his, though without authority to represent him, was present at this same meeting of the commis-

sioners. The plaintiffs were not notified, and knew nothing about the subsequent doings or meetings of the commissioners or their report till after it was filed and the decrees were entered. It does not appear that they took any steps to learn what the report was till after the entry of the decrees, or that they made any efforts or expressed any desire to be heard by the commissioners, or to be present at their meetings, with the exception of what has been stated as to the first one. They do not now impugn the skill or honesty of the commissioners, or point out any mistake in their report, or error in the decrees traceable to it. They did not express any wish or make any effort to be heard in reference to the final decrees, and the court was under no obligation to confer with or notify them about the decrees. If there was at any time any ground on which they could have objected to the appointment and doings of the commission, we think their conduct has been such that they must be deemed to have waived it, or to be estopped to insist upon it now. *Mount Hope Iron Co.* v. *Dearden*, 140 Mass. 430. *Fowler* v. *Parsons*, 143 Mass. 401. See also cases cited *supra*. The result is,          *Decrees affirmed.*