## SARAH A. PERRY *vs.* SAMUEL SNOW 2D.

Essex.   November 6, 1895. — November 29, 1895.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, & LATHROP, JJ.

*Trespass upon Land — Passageway — Ruling.*

In an action for trespass upon land, it appeared that the land and a dwelling-house thereon were partitioned between the parties as tenants in common by commissioners, whose report described a way from a street to be used in common by both as a "passageway six feet wide along the back of the house." There was no evidence tending to show that before the partition there had been a similar

way there which had been used both for foot travel and carriage travel, or that after the partition the parties had actually used it in that manner, but there was evidence tending to show the driving of teams generally on the land for some distance in the rear of the house. It also appeared that the width of teams varies from five and a half to seven feet. From the report of the commissioners and a plan of the premises it further appeared that the passageway went by the back door of the house and two feet beyond the cellar door, in both of which the parties had common rights. The judge ruled that the passageway was a footway, and was not designed for a carriageway. *Held,* that the ruling was right.

TORT, for breaking and entering the plaintiff's close in Marblehead, and tearing down and injuring her dwelling-house. The defendant justified his acts under a right of way over the plaintiff's premises, which was alleged to have been obstructed by the plaintiff's building. Trial in the Superior Court, before *Bond,* J., who allowed a bill of exceptions, in substance as follows.

It appeared that the premises now owned by the plaintiff and the defendant were formerly owned as tenants in common by James Topham and Benjamin Robinson ; that a certain dwelling-house was situated upon the premises, and, by an indenture made between Topham and Robinson, dated November 12, 1802, the dwelling-house was divided in severalty between them, but the remainder of the premises was still held by them as tenants in common; that Alexander S. Perry, the husband of the plaintiff, became the owner of the interest of Topham in the dwelling-house and land, and the defendant became the owner of the part set off to Robinson and of his interest in the land ; and that commissioners were appointed by the Probate Court to make partition of the real estate between Perry and the defendant, they holding the real estate as tenants in common, and on May 3, 1888, partition was made between them, and a right of way in a passageway six feet wide along the southeast side of the dwelling-house, for the accommodation of both, was set off by the commissioners, the material portion of whose report was as follows:

" And we hereby set off to Samuel Snow 2d and his heirs and assigns so much of said lot of land as lies northeasterly and easterly of the following line, viz. : Beginning at a point on the northwesterly boundary of said lot twenty-eight feet distant from Mason's land on the northeast and running southeasterly to a point on the southeasterly boundary of said land twenty-eight feet from said Mason's land ; with a right of way in a passage-

way six feet wide along the southeast side of said lot from Glover Street to the above described portion of land. The portion of land herein set off being subject to a right of way of Alexander S. Perry and his heirs and assigns in and over a passageway six feet wide along the back of the house from the land set off to him, as far as two feet beyond the cellar door. To Alexander S. Perry and his heirs and assigns we set off so much of said lot of land as lies southwesterly of the above described line, with a right of way in a passageway six feet wide along the back of the house from the land herein set off to a point two feet east of the cellar door; the portion of land herein set off being subject to a right of way of Samuel Snow 2d and his heirs and assigns in and over a passageway six feet wide along the back of the house to Glover Street. And the passageways herein established are to be in common for both parties."

A plan of the premises, showing the division of the dwelling-house, the location of the passageway, and the division of the real estate, is here given.

Mason Street.

Glover Street.

It further appeared that, prior to the acts complained of in the declaration, the plaintiff's husband, then owner of the premises, after the partition of the land by the commissioners, had constructed a building or "L" to his part of the house across the passageway set forth in the commissioners' report; that the de-

fendant, by an action against the plaintiff's husband, compelled him to remove the obstruction so placed across the passageway; that on May 26, 1893, the plaintiff's husband conveyed his interest in the premises to Charles E. Perry, who on the same day conveyed his interest so acquired to the plaintiff; that immediately after the termination of the proceedings against her husband for encumbering the passageway, the plaintiff caused the "L" to be severed from the main building, and moved back six feet across the passageway and connected to the main building by an addition from the "L" to the main building six feet long and six feet wide, and seven feet and seven inches above the ground at the highest point, and about nine feet from the lowest part of the ground; that the connection was about six feet in height, and was covered and used as a passageway from the second story of the plaintiff's premises to the stairs in the "L"; and that on June 6, 1893, shortly after the removal of the "L" across the passageway and the construction of the connection between the "L" and the main house, the defendant went upon the premises with two carpenters and sawed the connection at a distance of five feet and ten inches from the main house, and removed the connection from the house.

The plaintiff testified that she had lived on the premises forty-one years; that no part of the way had ever been used for teams; that on two occasions since the division of the premises by the commissioners she had seen the defendant's son lead a horse on the way; that she had seen the defendant use the way to get to his barn in the rear of the premises; that there was a wooden platform on the part of the land near the door; that the defendant was present, and took part in removing the structure; that there were quite a number of people present at the time; and that, in removing said structure, some damage was done to the main building.

On cross-examination, the plaintiff testified that, before the division of the land by the commissioners, tenants in the house used the land for whatever purposes they wanted to; that she had seen teams driven upon the land from Glover Street, but not nearer than ten feet from the house; that a tenant in the house used to have teams driven from Glover Street upon the land, and they would stop about ten feet from the rear door; that she saw this a number of times prior to the division; that before she

came to live there teams used to be driven from Glover Street upon the land; that about eighteen or nineteen years previously a fence was built on the Glover Street line of the premises, and a large gate about ten feet wide was placed in the fence; that the gate opened on that part of the plaintiff's land over which the right of way was claimed, but not on the passageway in dispute in this action; that the gate was used four or five years after it was put up; that up to that time people continued to drive from Glover Street on to the land; that she might have seen carriage tracks there; that one Robinson had a building on the land now of the defendant, which was used for a storehouse; and that coal and wood were brought in wagons over the land of the plaintiff from Glover Street to the building of Robinson.

Evidence was also introduced in behalf of the plaintiff, tending to show that the bottom of said structure was about nine feet from the surface of the way, that the surface of the way was of rock, and was rough and uneven, and unfit for teams to travel on; and that there was a rise in the way of about three and a half feet from the street.

John Giles, called as a witness in behalf of the plaintiff, testified that he had seen a number of teams go upon these premises from Glover Street when one Doherty occupied the building of Robinson, and during the time that the plaintiff occupied the premises; that he had seen manure hauled in wagons from Doherty's building across the premises of the plaintiff to Glover Street; that he had seen covered teams go upon the premises from Glover Street; and that he had hauled wood there himself, but he had not seen teams on that part of the premises upon which the right of way was claimed.

The defendant testified that he was, and at the time of the partition by the commissioners had been, a wholesale grocer and produce dealer, and used teams; that he had lived on the premises twenty-five years previously; that the platform lying on the ground, as testified to by the plaintiff, was placed there by himself, and was nothing but a piece of plank and was used as a step; that there was no other way for teams to enter upon his premises except by said way; that he had often seen teams driven upon the premises; that he used covered teams in his business eleven feet in height; and that there was an opening in the cellar of the

plaintiff on Glover Street through which he received coal, wood, and other commodities, as he had occasion to use them.

It appeared in evidence that there was a way upon the northerly side of the plaintiff's premises, running from Glover Street, as shown on the plan.

Isaac K. Harris, a civil engineer, called as a witness in behalf of the defendant, testified that the height from the platform to the ground was seven feet and seven inches at the highest part of the way, and about eight feet and a half at the lowest; that the distance from the door to the street line was twenty-six feet; that there was a rise of about two feet and five inches in that distance; that the grade was less than the grade very often made in streets that are laid out by towns; and that the surface of the way was a smooth shelving rock, and fit for teams to travel on.

Evidence was also introduced in behalf of the defendant tending to show that proper care was exercised in removing the structure; that no unnecessary damage was done to the main building by the defendant; and that the width of teams varies from five feet and six inches to seven feet.

At the close of the evidence, the judge ruled that the passageway was not designed for a carriageway; that it was what is technically termed a footway, with such use as is made of such ways, that is, not a way for a footway and carriageway; that, being a footway, it was for the jury to say whether it needed any more in height than was left for a footway and such uses as a footway are ordinarily put to; that if they should find that it was left high enough for a footway, then the defendant had no right to disturb it at all, and whatever he and those who acted under him did in that way was a trespass, for which the plaintiff might recover; that if whatever was done by the plaintiff did not make the way unfit for the use that the defendant had the right to make of it, then the defendant had no right to remove any structure there; and that the injury which was done to the property was one element of damage, and, if the jury were satisfied that this was done wilfully and wantonly and without right, the plaintiff was entitled to recover for the insult and injury offered by such conduct to her house and home.

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*H. F. Hurlburt & E. T. McCarthy,* for the defendant.

*H. P. Moulton,* for the plaintiff.

MORTON, J. The way is described more than once in the report of the commissioners as "a passageway six feet wide along the back of the house," but there is nothing in the report to indicate the kind of travel which it is to be used for. If there had been at the trial any evidence tending to show that there had been in existence at that place, before the partition, a similar way which had been used for foot and carriage travel, it might have been a question of fact for the jury whether the commissioners did not intend that the way which they established should be used in the same manner. So also it might have been a question of fact for the jury whether the way was designed for foot and carriage travel, if there had been evidence tending to show that after the report of the commissioners the parties actually had used it in that manner.

But evidence tending to show the driving of teams generally on the land for some distance in the rear of the house would have no tendency to show that there was a way for foot and carriage travel in this particular place; *Starkie v. Richmond,* 155 Mass. 188, 196; nor, we think, to show that the commissioners intended this way for foot and carriage travel. The defendant testified "that there was no other way for teams to enter upon his premises except by said way." But it was in evidence, and appears clearly from the plan annexed to the exceptions, that there was a way on the northerly side of his premises running from the same street from which he claimed the right to enter with teams over the plaintiff's premises, and his testimony must be taken, we think, subject to the qualification thus imposed upon it. It also appeared that the width of teams varies from five and a half to seven feet. It would seem, therefore, if the way had been intended for carriage travel, that it would have been made wider. From the report of the commissioners and the plan it appears that the passageway goes by the back door of the house and two feet beyond the cellar door, in both of which under the indenture of 1802 the parties have common rights, and for convenient access to and from which by the tenants of the portions of the house belonging to the plaintiff and the defendant respectively it would seem to have been the object of the commissioners

to provide, rather than for a carriageway to and from Glover Street for the defendant and his tenants or grantors.

Upon the whole case, we think that the ruling of the court was right. The exception as to damages has not been argued, and we have not considered it.    *Exceptions overruled.*