JOHN M. SMEDES v. THE CINCINNATI INTERTERMINAL
RAILROAD COMPANY.

1. An injunction against the construction of a railway upon or
   across a public street is properly refused an individual property
   owner where the railroad company is proceeding under ordi-
   nance of the city council, duly passed, and where the proof
   shows that the injuries claimed to result are only those suf-
   fered in common with all other property owners of the neigh-
   borhood, and are the infraction of public and not of private
   rights.
2. The individual property right of an owner, in respect of property
   abutting on the street, extends only to the middle of the
   street. He has, in addition, a general right as to access,. air,
   light, etc., which may become specialized by injuries specially
   accruing to him; but until thus specialized, his general right
   as one of the public, must be enforced through the proper mu-
   nicipal agencies in the manner provided by law.

HOSEA, J.

The petition in this case alleges plaintiff's ownership of
a lot 25 feet by 60 feet deep on south side of Third street,
lying 25 feet west of Mill street; and that by virtue of an
exhibited ordinance of the Board of Legislation of Cincin-
nati, passed August 24, 1903, the defendant laid a track
across the sidewalk on the north side of Third street oppo-
site plaintiff's property, and thence southeastwardly across
Third.   Plaintiff also alleges that defendant intends to
construct a double-track elevated railway from the north-
west corner to southwest corner of Third and Mill, and
that these constructions will impair the access to his prop-
erty; and also that prior to the track construction described,
his only means of exit from his property, without crossing
railroad tracks, was along Third both ways to other named.
streets, including Stone street; that the defendant's rail-
way is extended across Stone street, completely blocking
same, and that the defendant intends to cover said tracks
with elevated tracks and to cover all of said tracks with
a permanent building.

He avers that the trackage crossing of Third street at

Mill street violates the Constitution of the United States, and the statutes of Ohio which grant no power to construct overhead track, and also the Constitution of Ohio; and he asks a mandatory injunction to prevent the defendant from laying additional surface tracks, from continuing to lay the surface track already laid, and constructing the overhead railway, and a temporary restraining order pending the hearing.

An amendment to the petition filed at the hearing avers that the surface track occupies a specified portion of the sidewalk immediately opposite plaintiff's lot, and that the proposed overhead construction will be above the same; and that this will deprive him of his property and easements in Third street; will depreciate his property; that the running of cars and locomotives is an unlawful diversion of the street use, is an added burden, and will impair his rights and cause him irreparable damage, etc.; and that the overhead crossing will darken his premises and produce a muddy condition of the street, creating a nuisance.

The answer of defendant avers that it is proceeding in accordance with the ordinance in building its railroad, but denies any impairment of access to plaintiff's property; and avers that it is building a single—not a double—track, crossing Fifth street, Baymiller and Third streets, at such an elevation as not to interfere in any manner with street travel; and that the vacation of Stone street was by ordinance duly passed; and denies all other allegations.

The cause is by agreement of parties submitted for determination as upon final hearing—the plaintiff's affidavits being submitted as testimony in its behalf and the defendant producing a witness before the court, and the case being argued at length by counsel for both parties with marked ability upon the ultimate questions.

The affidavits submitted by plaintiff are opinions of plaintiff and other persons who are not shown to be qualified, except by general familiarity with the neighborhood. The plaintiff substantially reiterates the allegations of the petition and amendment, and the other affiants stating generally an acquiescence in plaintiff's views as to an indefinite

lessening of value of plaintiff's lot and impairment of access. No further testimony was offered by plaintiff.

Defendant produces the engineer and contractor in charge of the construction of the railway, and a blue print working drawing stating various distances and dimensions, showing the nature and extent of the work and its local relation to plaintiff's property. It is testified that defendant owns considerable property on the north side of Third from Mill westward, where it is establishing a yard and distributing depot for the reception of goods for and from its main elevated line, and that the surface track in question which crosses Third street southeastwardly (being the track complained of by plaintiff) is a spur or switch track for the purpose of setting cars in and out of said yard to be loaded or unloaded, and that this spur-track is not beneath but adjacent to its elevated structure and wholly independent; that it is laid flush with the surface of the street and constitutes no impediment to ordinary travel of the street. It is also shown that the elevated roadway is a single track and the crossing of Mill and Third streets will be a single, open-truss bridge, all supports of which are on defendant's own property, except one iron post or pier just within the curb line at the south side of Third east of Mill, and that the bridge will have an overhead clearance above the street and sidewalks of sixteen and a half feet. The side of the truss bridge at the nearest point will be about thirty-six feet from the southwest corner of Third and Mill, and the bridge eighteen feet wide, out to out.

It is also shown that, projecting the side lines of plaintiff's twenty-five-foot lot northwardly across Third street to the property line at the north side, the spur-track enters upon the north pavement at the property line fifteen feet west of the easterly projection of plaintiff's lot line, and crosses said projection eight feet south of the property line—thus covering a triangular portion of the pavement at the northeast corner of said space between the projections. The triangle is of fifteen feet base (on the property line) and eight feet vertical (on the easterly projection).

It will be apparent from the recitals of the petition and the evidence offered in support, that no distinction is made in the allegations of damage, between those rights of plaintiff upon which an individual action may rest and those enjoyed in common with the public and which must be asserted as public rights through the appointed agencies.

The alleged unlawfulness as to laying tracks across the street or building an elevated structure without statutory authority can not be inquired of here. The real question is whether in the doing of it, plaintiff has suffered any injury of a special kind peculiar to him and not shared by him in common with the other lot owners upon the street.

Again, it is to be observed that the present action does not seek an ascertainment and enforcement of damages for injury sustained or to be sustained, but a perpetual injunction, solely to prevent operation and maintenance of parts constructed and a prevention of further construction. No demand explanatory of the prayer for a "mandatory" injunction is pleaded. The nature of the action standing thus alone with no proposal to seek compensation, therefore requires cogent proof of facts necessary to give a court of equity jurisdiction. The facts to be shown are: (1) A present necessity to enjoin in order to preserve the status and that a continuance will result in irreparable injury to plaintiff; (2) inadequacy of legal remedies; and (3) that the injunction, upon a consideration of relative expense and inconvenience, would not be inequitable and oppressive to defendant and to the public whom it is organized to serve. *Green* v. *Richmond,* 155 Mass., 188.

Of course a case of this character does not admit of a perpetual injunction, and there is no need of a "mandatory" injunction to prevent acts in progress or threatened. Notwithstanding a mistake as to the relief needed, however, a court of equity is not bound by it, but will mould the relief to suit the exigencies of the case.

So far as concerns the trackway crossing Third street to the east of plaintiff's lot at the street level, or the anticipated muddy condition of Third street under the bridge when constructed, it is manifest that any inconveniences

growing out of them is suffered in common with all who have occasion to use the street, and they fall directly under the rule adopted in *Kinnear Co.* v. *Beatty,* 65 O. S., 264, as follows:

"Where one suffers in common with all the public, although from his proximity to the obstructed way or otherwise from his more frequent occasion to use it he may suffer in a greater degree than others, still he can not have an action, because it would cause such a multiplicity of suits as to be of itself an intolerable evil." (Citing C. J. Shaw in *Quincy Canal* v. *Newcome,* 7 Met., 276).

The closing up of Stone street is shown to have been the act of the city by formal vacation, and it does not appear that at any point on any other streets having access relation with plaintiff's lot, ordinary travel is physically impeded by any structure of defendant placed or to be placed thereon or thereover. The obscuration of light by the truss bridge at such a distnce, as shown, and in such relation to the lot in question could hardly be perceptible, much less material, to occupants of the house on the lot, deriving light—as it does and must—only at front and rear. The expected accumulation of water beneath the truss bridge is, moreover, fanciful. Certainly no more rain could fall there than elsewhere, and it is not to be expected that water shall stand in public streets and dependence be placed on the sun to dry out the accumulation. The obscuration of view as to a limited portion of the sky is hardly to be considered as a factor. It may be said, in a word, that this aggregation of inconsequential and specious objections does not add strength to any one, but rather weakens the force of the entire demand.

The allegation as to prospective damage from operation is quite too indefinite to be considered. There is neither allegation nor testimony in the case that the road is to be operated by steam. The inference to be drawn from the ordinance—which gives authority to erect and maintain electric poles and wires, and nowhere mentions steam—is that the road is to be operated by electricity. In such case the inconvenience to property owners would be reduced

to a minimum. The terms "locomotives and cars," used in the amended petition, apply to electric as well as to steam roads.

In this connection, it may shorten discussion and clarify the legal situation to quote another recent utterance of our Supreme Court which is quite applicable to the case in hand. It is as follows:

"While the abutting lot owner has the right of public travel on the street, and the right of ingress and egress from the street to his lots, the public authorities retain the right to improve the street and place such means of travel thereon as in their judgment shall best conserve the public welfare. And so long as his easement of ingress and egress is not materially injured, he is without remedy because he is not wronged, said easement—all the property right he has in the street—not being interfered with." *Traction Co.* v. *Parish*, 67 O. S., 181 (191).

After a careful consideration of all the facts, the court is unable to discover any such material interference with plaintiff's rights as to justify resort to the extraordinary powers of equity. Cases of a similar nature, substantially, have been before our local courts and the grounds of action applicable here have been so fully discussed as to render further comment unnecessary. See *P. C. & St. L. R. R.* v. *Cinti.* (Superior Ct.), 16 Bull., 367 (1904) ; *Gunning* v. *Rwy.* (Com. Pleas), 14 O. D., 660 (1904) ; *C. C. C. & St. L. Rwy.* v. *C. I. & W. R.* (do), 15 O. D., 112; *Herzog* v. *Railway*, 15 C. D., 702.

The only question raised in this case not involved in those above cited, is plaintiff's claim of a direct taking of his property in his appurtenant easement by the trackage occupancy of the fifteen-by-eight-feet triangle on the opposite side of the street adjacent to the north property line, and between his side lines projected across the street thereto.

Briefly stated, the rule of law in Ohio, beginning with *McComb* v. *Akron*, 15 Ohio, 474 (and earlier), and culminating in *Callen* v. *Edison Electric Light Co.*, 66 O. St., 166 (174-5), is, that the abutting owner has a beneficial use or easement in the part of the street in front of his property for

all purposes consistent with and subordinate to the dominant rights of the public therein for street purposes. As defined in *Crawford* v. *Village of Delaware*, 7 O. St., 469, it is a "private right of the nature of an incorporeal hereditament, legally attached to their contiguous grounds and the erections thereon." "This easement appendant to the lots * * * is as much property as the lot itself." (See also *Branahan* v.*Grand Hotel of Cincinnati*, 39 O. St., 333, and *Penrod* v. *City of Columbus*, 73 O. State, ——.)

If this easement, as held by the circuit court in *Madden* v. *Pennsylvania Railroad Company*, in 21 O. Cir. Ct., 73, extends clear across the street to the opposite property line, then, obviously, the easement of the opposite owner extends back across the same territory. Thus we would have double easements in the same street, appendant to two opposite independent lots, each of a nature that precludes a use in common, existing solely with reference to each lot as appurtenant thereto, and "as much property as the lot itself."

The manifest incongruity, not to say impossibility, of such a relation, carries its own refutation. If, for example, a man should desire to construct a cellar-way or coal-vault, erect a hitching-post, or plant trees, in front of his house, under this doctrine he must necessarily obtain consent of his opposite neighbor by purchase or negotiation, or else be enjoined in trespass, for he would have no power to condemn, and even in a suit of the present nature he must make his opposite neighbor a party. It seems evident therefore that if this is what the circuit court meant, it has confused things that are quite distinct. One is a beneficial right in the soil for all purposes subject to the dominant public right; the other is a mere right of protection against injurious change of conditions.

Undoubtedly the abutting property owner has a general right in the street to its full width as one of the public, to light, air, facilities of travel, etc.; but the special property right in the street contiguous to his lot as an "appendant easement," is a personal right of ownership—in fact, a qualified equitable fee with a possible reversion of the legal title—a property right going to the entire beneficial use of

that contiguous part of the street on which his lot abuts, which is, and necessarily must be, exclusive of every other lot owner, and subordinate only to the public right in the same soil for street purposes. The actual occupancy of any part of such special easement is a taking, *per se,* of one's interest in the land, and may be enjoined without proof of damage, but interference with the other and general easements which extend to the whole street, will be enjoined at the suit of a general owner upon the theory of constructive taking, only upon proof of actual or threatened injury of a substantial and material character, to the particular premises, and not shared in common by other lot owners. The necessity, in the way of material injury, must be clearly shown as a fact under the general rule relating to injunctive relief based on inadequacy of legal remedies.

From the inherent nature of the special easement of contiguity it follows, as a physical necessity, that the outer limit of such particular or appendant easement must be the center line of the street; and this is declared in *Callen* v. *Edison Elec. Light Company,* 66 St., 166 (174-5).

"For practical purposes," says the court, after citing the prior cases on the subject and pointing out that in country roads this easement extends to the center as an incident of ownership, "there is no substantial difference in the right of the owner of lands abutting on a country highway in such highway, and that of the owner of a lot abutting in a city street in such street."

This must be held to overrule the circuit court doctrine cited. *Ad medium filum viae,* is also the rule in many other jurisdictions applicable to both private and public ways (see 146 Mass., 585; 47 N. J. Eq., 421; 49 N. Y., 346; 14 C. B. (N. S.), 398; see passim, *Gas & Fuel Co.* v. *Townsend,* 1 N. P. (N. S.), 289, and authorities therein cited).

That the passage of a railway over the pavement opposite the lot of plaintiff and between the projection of his side lines, is a direct taking of his property upon the theory that it is his appurtenant easement, such as is meant in the series of Ohio cases referred to, is therefore untenable. Upon this theory a railway would pay double for all it gets in

the use of the street, and lot owners would be in constant disputes.

In the present case, as in *P. C. & St. L. Rwy.* v. *Cinti.*, *supra,* and *Gunning* v. *Railway, supra,* the track is not part of the main line, but a spur to a freight-distributing station.

Presumably, therefore, the use will be no more of an impediment to travel than if horses and wagons were employed for this purpose, and this is held to be such a use as the authorities had a right to grant. *Traction Co.* v. *Parish,* and *Gunning* v. *Rwy., supra.*

The facts disclosed do not make out a justifiable basis for injunctive relief. Any injury to plaintiff's lot that may exist from the construction is not shown to be of so material and injurious a nature as to require equitable interposition. Plaintiff has a plain and adequate statutory remedy at law for all injuries suffered, and to this he must be remitted. Moreover, it is quite obvious to the court that to stop the progress of work of this character and magnitude, already under way, with contracts made and men employed, would be inequitable and oppressive out of all proportion to any injury to plaintiff's easement, if such exists; and it is not claimed that defendant is not entirely solvent and able to respond in damages, nor is any sufficient reason shown why this suit was not brought at an earlier stage of the enterprise.

The prayer for injunction will be denied, and as no other necessity for equitable relief appears, the petition will be dismissed.

Petition dismissed.

*Charles H. Stephens, Sr.,* and *Charles H. Stephens, Jr.,* for plaintiff.

*John Galvin,* for defendants.