# Bienville Water Supply Co. v. City of Mobile.

*Bill in Equity to enjoin a Water Company from cutting off its Supply of Water.*

1. *Enforcement of public duty by injunction; contract of water company to furnish water for fire purposes.*—Where by its charter, a city is charged with the duty of supplying water for fire purposes, and a water company, with knowledge of such duty, contracts to furnish it, and by its charter consents to be charged with such duty, the water company can not afterwards summarily shut off the water without making some provision for protection from fires; and a court of equity will enjoin such act, at the instance of the city, even though some incidental embarrassment may result to the strict contractual rights of the parties.

2. *Same; same; effect of such relief.*—In such cases, the proceeding is not strictly one for the specific performance of the contract, but one, rather, by the negative means of injunction, to enforce the performance of a public duty.

[Bienville Water Supply Co. v. City of Mobile.]

APPEAL from the Chancery Court of Mobile.

Heard before the Hon. W. H. TAYLOE.

The bill in this case was filed by the appellee, the City of Mobile, against the Bienville Water Supply Company, on May 26, 1894; and prayed to have the Water Supply Company enjoined from cutting off the water supplied to the city by said Water Supply Compano under a contract with the said city, and from lowering the pressure thereof. The facts of the care are sufficiently stated in the opinion.

The present appeal is prosecuted from a decree of the chancellor overruling the defendant's demurrer to the bill; and this decree is here assigned as error.

OVERALL, BESTOR & GRAY, for appellant.—When the city decided to exercise the right of having forfeited to it the one thousand dollars, it immediately terminated the contract. That this is true, is readily discernible. The bill had for its object the specific performance of a contract, and yet the city had not put itself in a position to enforce the contract, even if construed as it claims. But this is such a contract as a court of equity will not undertake to enforce. Mutuality of remedy as well as of obligation, is an essential element of a contract such as will be specifically enforced by a court of equity. Where the contract is such that it requires the frequent interference of the court for years to keep it in force, or to exercise its powers in committing for a violation of its orders, the court will not undertake to enforce it, or to enjoin for its violation.—*Iron Age Pub. Co. v. W. U. Tel. Co.*, 83 Ala. 498; *Blackwilder v. Loveless*, 21 Ala. 371; *Blanchard v. Detroit &c. R. R. Co.*, 31 Mich. 43; *Bickford v. Davis*, 11 Fed. Rep. 549; *Marble City v. Ripley*, 10 Wall. 340.

PETER J. HAMILTON, *contra*.—Construing the act in connection with the duties to the public incident thereto, there was no termination of the contract by reason of the fact that the city sought to make the water company liable for its forfeiture as stipulated in the contract. The law will not permit a man to take advantage of his own wrong, and it will not adopt a construction of a contract which permits it. — *Wingo v. Hardy*, 94 Ala. 184.

Even if this was a suit for specific performance, the contract should be enforced. It is certain, mutual, involves no discretion, and for its breach damages are inadequate.—Pomeroy on Contracts, § 165; Waterman on Spec. Perf., §§ 152, 153, note, § 721; *Columbia Co. v. Columbia*, 5 Rich. (S. C.), 225; *Weale v. Water Works*, 1 Jac. & Walk. 374; 22 Amer. & Eng. Encyc. of Law, 710, 912, 914, 917, 940; *Joy v. St. Louis*, 138 U. S. 2; *Davis v. Roberts*, 89 Ala. 405. Even when the court would not originally compel specific performance, for example, of personal services involving skill and discretion, "the more reasonable doctrine," says SOMERVILLE, J., is to accomplish the same purpose so far as it can be done by the negative means of injunction.—Waterman on Specif. Perf., § 2; *Iron Age Pub. Co. v. W. U. Tel. Co.*, 83 Ala. 498; Kerr on Injunction, 493, 528, 534.

BRICKELL, C. J.—The City of Mobile and the Bienville Water Supply Company, under authority conferred by their respective charters, entered into a contract by which the latter undertook to supply water to the inhabitants of the city for private purposes at fixed rates and to supply to the city itself water for public purposes, including service at fires. The charter of the company by its sixteenth section, provides for the erection of hydrants upon request of residents of certain localities, to be paid for by taxation; and that other hydrants erected under other conditions shall, with certain other apparatus connected with the fire service, be paid for by the city. It is further provided that the water for this service shall be furnished "free" except as paid for from the sources mentioned. Under these conditions it is evident that the water is actually paid for by the inhabitants of the city.

By the second section of the contract it was provided as follows: "Said Bienville Water Supply Company further agrees to erect or cause to be erected in some suitable place to be agreed upon by the General Council of said city, a gauge which shall indicate an average pressure of eighty (80) pounds at the hydrant for every twenty-four hours; failure to maintain such pressure shall abate the price proportionately for the time such failure continues after the expiration of such twenty-four hours. In addition, said Water Supply Company

agrees and guarantees to furnish for fire service during the existence of any fire or conflagration at any time within the city within reach of the hydrants, through three hundred feet of two and one-half inch double leads of hose with one inch nozzle, six vertical streams of eighty feet each; through same hose with one and one-quarter inch nozzle, six vertical streams sixty feet each. For failure to render this service at any time during such fires or conflagration, said Water Supply Company hereby agrees to forfeit to the said city, the sum of one thousand dollars, and that thereupon this contract shall immediately cease and terminate; provided, however, that such company shall not be subject to such forfeiture or termination of this contract, if by any reason of any illegal, unlawful or improper interference by parties other than said company, with the pipes, mains, hydrants or machinery of said Water Supply Company, it shall be unable to render the service," &c.

The bill is brought by the city of Mobile. It alleges that an extensive conflagration occurred in that city on the night of March 16th, 1894; that hose was attached to hydrants near by, but that with only three streams playing through hose not over three hundred feet long, and through nozzles not exceeding one and one-quarter inches, the vertical streams furnished failed to reach sixty feet each. That a proper supply was not furnished until after the company's superintendent had ridden eleven miles out to the pump house and increased the pressure, and that the greater part of the damage had occurred before this was done.

It is alleged that the General Council subsequently declared by resolution that the Water Company had, by reason of the alleged breach of contract, forfeited to the city the sum of one thousand dollars. Pursuant to this action, the city deducted that sum from the monthly instalment next due. The Water Supply Company thereupon directed its attorney to demand payment of the sum declared forfeited, and gave notice to the city that in default of payment it would shut off water used for public purposes. The bill is filed to enjoin this threatened action, and the case is before us on appeal from the decree of the chancellor overruling the demurrers of the defendant.

Treating the case as controlled by the principles ap-

[Bienville Water Supply Co. v. City of Mobile.]

plicable to ordinary bills for specific performance, it is insisted by the demurrers, first, that the contract, providing, as it does, for the performance of continuous duties extending over a series of years—duties involving personal labor and skill—is not one which a court of equity will superintend or specifically enforce. And next, that aside from this feature of the case, the city itself is not in a position to ask specific performance, by reason of its own repudiation of the contract.

1. If the bill be of the character asserted in the first contention, it would be wanting in equity and should be dismissed. In *Electric Lighting Company of Mobile v. Mobile & Spring Hill Railway Company*, 109 Ala. 190, we held and we now repeat, that the "general doctrine is, that a court of equity will decree specific performance only when it can dispose of the matter in controversy by a decree capable of present performance. It will not decree a party to perform continuous duty extending over a series of years, but will leave the aggrieved party to his remedies at law." But we do not understand it to be the purpose or prayer of the present bill, that the court should assume to specifically enforce, during the continuance of the contract, the mutual duties resting upon the parties by reason of their contractual relations. It alleges, it is true, the existence of the contract, and its breach by the defendant; but it is fairly deducible from the pleading, that these averments are by way of inducement only, a statement of successive occurrences leading up to the final act—the threatened shutting off by the defendant of all water for public purposes.

The abstracts furnished are not full or precise in the statement of the case. They were doubtless prepared on the assumption that they would be amplified by reference to the transcript. This, under our construction of our rule, we are not at liberty to do.—*O'Neal v. Simonton*, 109 Ala. 369.

If the bill is broader in its prayer for relief than we have construed it to be, it seeks more extended relief than can be decreed. But regarding it as filed solely for the purpose of preventing such injury to the public as might arise if the Water Company should shut off the water, it is not open to the objection urged. The duty of furnishing water for the extinguishment of fires is one which might well attach to the municipality with-

[Bienville Water Supply Co. v. City of Mobile.]

out being specially imposed.—1 Dillon Munic. Corp., (3d ed.), 143, 146. But here it is expressly enjoined by charter.—Acts, 1886-87, p. 223. The defendant contracted with the city not only with full knowledge of this duty to the public, but by its own charter, in consideration of valuable public franchises, it consented to be "charged with the duty of introducing (into the city) such supply of pure water as the domestic, sanitary and municipal wants thereof may require." We have shown, with respect to the water to be furnished for fire service and sanitary purposes that while, nominally, no charge was to be made, the company was indirectly compensated for it; and it may be that when its obligations are measured by strictly contractual relations, it should not be required to further proceed in the execution of its contract, if the other party had wrongfully abandoned it by with-holding the agreed compensation.

But the company also owes a duty to the public. Neither it nor the city would be permitted, summarily and without making some other provision for the safety of the public, to shut off the water. We judicially know that contracts of this character once entered upon, become, in a sense, perpetual. They may contain provisions for forfeiture or for expiration by limitation; but from their very character, there is expectation if not assurance, that so inseparable and necessary an adjunct of municipal existence will be carried forward by some one, if not by the original projectors. Changes may and do take place; but where such agencies have thus become incorporated into the municipality itself, it would be the duty of the court to see that these changes are not so violent or summary as to endanger public or private property.

While the State has no recognized interest in the property of its citizens, its right to appeal to the courts for the protection of the public interest is well settled.—*Att'y. Gen. v. Jamaica Pond Aqueduct Corp.*, 133 Mass. 361; *Coosaw Min. Co. v. South Carolina*, 144 U. S. 550, 556; *Sparhawk v. Union Pass. R. Co.*, 54 Pa. 401; *People v. Powers*, 83 Hun 450; *U. S. v. Am. Bell Teleph. Co.*, 128 U. S. 315.

The prevention and abatement of nuisances affecting the health or comfort of the public at the instance of municipalities is also a recognized branch of equitable jurisdic-

tion.—1 Dillon Munic. Corp., (3d ed), 379; Story Equity Juris., §§ 921, 923, 924; Pom. Eq. Jur., § 1349; High on Injunctions, §§ 745, 1554.

The duty of the State extends, in respect to corporations, to a resumption by forfeiture of grants of power which have been abused to the detriment of the public. Can it be that the State may not prevent by injunction a wrong which, if perpetrated, would warrant a forfeiture? And, if such a duty rests upon the State, why on like principle, should it not also devolve upon the municipality charged with the protection of the lives and property of its inhabitants? In cases like the present, some way can doubtless always be found to protect the rights of the public without invading or infringing the contractual rights of the parties. But if cases should arise where all these rights in their fullness could not be protected, the rights of the public, in view of which the contract was made and in consideration of which valuable franchises have been accorded, should not be defeated because of incidental embarrassment to some extent of the rights of parties to the contract. In such cases, the proceeding is not strictly one for specific performance of the contract, but is one rather by the negative means of injunction of enforcing the performance of a public duty.—*Iron Age v. Western Union Tel. Co.*, 83 Ala. 498, 508.

If the city may not adopt this remedy, it is without any remedy. If pursuant to the notice given, the company should shut off its water supply, and damage should result, no matter how extended, it is settled, that neither the city nor the owners of private property injured by the breach of public duty, could maintain an action against the company.—*Moundsville v. Ohio River R. Co.*, 20 Lawyers Rep. Ann. 161. On the other hand, if the city has wrongfully declared the forfeiture, the courts are open to the company to have that fact judicially determined and secure the full measure of its rights. It cannot be permitted, however, to enforce its construction of the contract by way of reprisal fraught with such dangerous consequences to the public.

What we have said renders it unnecessary, if not improper, to determine other questions presented by the demurrers. We remark in conclusion that under the allegations of the bill, the final decree should go no

further than to enjoin the threatened action of the defendant.

Affirmed.