### WEST et al. v. PROBST et al.*
(No. 1047–3977.)

Commission of Appeals of Texas, Section A.
May 2, 1928.

**1. Compromise and settlement ⊕⇒17(2)—Defendants suing on behalf of themselves and lot owners could agree to judgment disposing of their rights, but it would not deprive lot owners from continuing suit.**

Where named plaintiffs bringing suit on behalf of themselves and all other lot owners of town similarly situated sought to agree to judgment disposing of entire case and settling rights of themselves and all lot owners not named, but on whose behalf suit was also expressly brought, *held* that, while named plaintiffs had right to compromise and settle their suit, remaining lot owners had right to continue to prosecute same in so far as their rights were concerned.

**2. Easements ⊕⇒2—Waterworks and sewer system held not subject to easement by implication in lot owner's favor, since operation required act of man to perfect or indicate its use.**

Where lot owners attempted to assert an implied easement in waterworks and sewer system which was constructed by their common grantor in laying out the town, but afterwards

conveyed to corporations, *held,* that easement could not exist by implication because improvement was not of such nature as not to require act of man to perfect or indicate its use.

**3. Evidence ⟐5(2)—It is common knowledge that waterworks and sewer system require act of man to perfect and indicate uses.**

It is common knowledge of mankind that both waterworks and sewer system require act of man to perfect and indicate their use.

**4. Easements ⟐12(2)—Deed providing for regulation of rates for waterworks and sewer system held not to create express easement for benefit of lot owners.**

Where lot owner attempted to assert easement in waterworks and sewer system under deed, legal effect and express purpose of which was to devote property to public use and not to private purpose by providing for rates to be fixed by authority, *held* that, such authority being in governing bodies of cities and towns, property was public utility and not subject to private easement.

**5. Easements ⟐12(1)—Deed dedicating waterworks and sewer system to public held incompatible with asserted private easement of lot owner.**

Where lot owners attempted to assert easement against waterworks and sewer system under deed by which grantor assumed public duty dedicating such properties to use of entire public of town, and not to persons who should purchase lots from him, *held,* that such dedication was incompatible with any conception of private interest or easement in favor of several lot owners in these public utilities.

**6. Easements ⟐12(1)—Under deed providing for use of water from well until waterworks was installed, in case of withdrawal of utility lot owners had perpetual easement in well.**

Under deed providing for dedication of waterworks and sewer system to public, and further providing that until waterworks was installed any lot owner should have right to use water from well of grantor, *held,* that, in case utilities were withdrawn from public use, lot owner would have perpetual easement and right to use waters from well mentioned.

**7. Easements ⟐15—Lot owners held not to have right of easement in waterworks and sewer system by necessity, since they could provide themselves with water and sewerage.**

Grantor in deed providing for construction and maintenance of waterworks and sewer system, dedicating same to public, *held* not to create right of easement in such utilities in lot owners by necessity, since they could provide themselves with water and sewerage in usual and ordinary manner.

**8. Municipal corporations ⟐710—Waters and water courses ⟐188(3)—Operators of waterworks and sewer system, having assumed duties and obligation of public utility, have right to discontinue operation as such.**

Where grantor of lots in town constructed waterworks and sewer system, turning same over to corporation after dedicating them to public and assuming duties and obligations of those operated public utilities, *held,* that as operators of public utilities they had right to discontinue operation.

**9. Municipal corporations ⟐710—Waters and water courses ⟐201—Waterworks and sewer system operating as public utility could not discontinue service without giving patrons reasonable time in which to provide themselves with such service.**

Where grantor owned all land in town constructing waterworks and sewer system, which he dedicated to use of public, turning utilities over to corporations, *held* that, should utilities discontinue operation, equity would require that patrons be given reasonable time in which to provide themselves with water and sewerage otherwise.

**10. Waters and water courses ⟐201—Reasonable notice by public utility to patrons to procure other service depends upon character of business.**

Reasonable notice given by public utility to patrons to procure other service in particular case depends upon character of business.

**11. Waters and water courses ⟐201—Water company may abandon service only after period enabling patrons to procure new supply.**

Water company may abandon its service only after long enough period to enable patrons to procure new supply.

**12. Municipal corporations ⟐710—Sewer company may abandon service only after period enabling patrons to provide other sewerage.**

Sewer company may abandon its service only after long enough period has been allowed to enable patrons to provide other sewerage substitute therefor.

**13. Municipal corporations ⟐710—Waters and water courses ⟐203(10)—Water or sewer company is entitled to annual earnings sufficient to provide for current expenses, depreciation, and fair return on capital.**

Water company or sewer company is entitled to earn sufficient sum annually to provide not only for current repairs, but for making good depreciation and replacing parts of property when they come to end of their life and pay fair return on capital judiciously expended in construction of plant.

**14. Municipal corporations ⟐710—Waters and water courses ⟐203(10)—Reasonable value of water plant or sewerage system at time of use is basis for determining whether rates are reasonable.**

In determining value of water plant or sewerage system, reasonable value of property at time it is being used for public service is basis for determining whether rates fixed are reasonable.

**15. Municipal corporations ⟐710—Waters and water courses ⟐203(10)—Investment on which water or sewer company may determine rates includes only property employed.**

Investment on which water company or sewer company is entitled to base its compensation in determining sufficiency of rates cannot include property not at present actually employed,

---

⟐For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

however useful it may have been in past or may yet be in future.

**16. Municipal corporations ⬳710—Waters and water courses ⬳203(10)—Personalty may be considered in determining investment on which water company or sewer company may base its compensation if reasonably necessary for business.**

In determining investment on which water company or sewer company is entitled to base its compensation, value of personal property should be considered if it represents investment reasonably necessary for carrying on business successfully.

**17. Municipal corporations ⬳710—Waters and water courses ⬳203(10)—Generally, water or sewer company may charge rate that will pay cost of operation, upkeep, depreciation, replacements, and reasonable return on "investment."**

As a general rule, a water company or sewer company is entitled to charge and collect a rate that will pay cost of operation, provide for its upkeep and for depreciation and replacements and reasonable return on "investment," by which is meant present value of active properties in use and reasonably proper and necessary for service to be performed.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Invest— Investment.]

**18. Municipal corporations ⬳710—Waters and water courses ⬳203(10)—Water and sewer company, having plants capable of serving 3,000 to 5,000, having only 50 patrons, could only charge rate which would be reasonable had money used to build plants been judiciously expended.**

Where water and sewer company had systems extensive enough to supply and serve town of from 3,000 to 5,000 inhabitants, when it only had about 50 patrons, rate charged should not exceed what would be reasonable had money used to build systems been judiciously expended.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Suit by Joe Probst and others against George W. West and others. To review a judgment of the Civil Court of Appeals (251 S. W. 289), reversing the judgment of the district court and rendering a judgment which was not satisfactory, each party sued out a writ of error and both writs were granted. Reversed and remanded.

Beasley & Beasley and Dougherty & Dougherty, all of Beeville, and Denman, Franklin & McGown, of San Antonio, for plaintiffs in error.

L. D. Stroud, of Beeville, and Gordon Gibson, of Laredo, for defendants in error.

ORITZ, J. This suit was originally instituted in the district court of Live Oak county, Tex., by Joe Probst, I. J. Dawd, Ben S. Brown, and M. G. Bartlett, on behalf of themselves and all other property owners in the town of George West, against George W. West, an individual, and against two corporations, the George West Water & Light Company and the George West Sewer Company. The two corporations were and are incorporated under the laws of Texas, and George West is the principal owner and stockholder. The purpose of the suit is to establish certain rights, in the nature of easements, in favor of the plaintiffs, who are the four named plaintiffs and the 54 other owners of lots in said town, against the water and sewer systems of said town, built by West, the individual, and afterwards conveyed by him to the two corporations above named. The waterworks was conveyed to the George West Water & Light Company and the sewer system to George West Sewer Company.

The pleadings in the case are very voluminous and, original and amended, comprise about 110 pages in the transcript. The plaintiffs in the district court, who are the lot owners, will be designated herein as plaintiffs, and West and the two corporations as defendants.

The plaintiffs in their petition in the trial court assert a perpetual interest in the nature of easements in the waterworks and sewer system, by virtue of the following: First, by virtue of the provisions, limitations, and conditions of the deeds of conveyance; second, by virtue of the contract (which is the deed) construed together with promises and representations, made at the time, and before, the purchase of their lots, and at the time of the removal of the county seat; and third, by virtue of the necessity of the easement for the enjoyment of the lots conveyed to them by West, on account of the conditions contained in the deeds, and the reservations by West of the right to the exclusive use of the streets for water and sewer purposes.

The conveyances were all in the form of ordinary warranty deeds, with certain conditions added. In fact, a uniform deed was used, and the deed to Probst is set out in full in the trial court's findings of fact, and is as follows:

"State of Texas, County of Bexar.

"Know all men by these presents that I, George W. West, in consideration of $1,100 to me in hand paid and secured to be paid as follows, to wit: [Here follow details as to payments] have this day and do hereby grant, bargain, sell, and convey unto Joe Probst, his heirs and assigns, all that certain land situated in Live Oak county, Tex., more particularly described as follows, to wit:

"Lots numbered 11 and 12 in Block numbered 31 in the town of George West as per plant of said town recorded in volume V, pages 35–37, of the Records for Deeds of Live Oak county, Tex., to which plat and its record reference is here made, and the same is made a part hereof for a more complete description.

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"To have and to hold said property unto the said grantee, his heirs and assigns, in fee-simple title forever, subject to a vendor's lien upon the same, which is hereby reserved to secure the payment of said promissory notes according to their respective tenors and effect, and subject also to the conditions hereinafter expressed. And I bind myself, my heirs and representatives, to forever warrant the title unto the said grantee, his heirs and assigns, against all persons lawfully claiming or to claim the same or any part thereof; subject, however, to said vendor's lien and said conditions as against which this warranty does not apply.

"This conveyance is made and accepted upon and subject to the following conditions, to wit:

"First. Neither said grantee nor any subsequent owner of said property or any part thereof shall at any time hereafter sell, lease, or rent the same, or any part thereof, to any negro or person of African descent.

"Second. Said grantee, his heirs and assigns, shall within 24 months from the date hereof erect and construct upon said property improvements of a value not less than said selling price, all roofs to be of fireproof material, such as tin, iron, gravel, tile, slate, etc., but no wood shingles or other wood to be used on the surface or exposed parts of the roof.

"Third. Said grantee, his heirs and assigns, shall connect said improvements, including all baths, closets, kitchen sinks, etc., thereon in a skillful, sanitary, and workmanlike manner with the sewer system in said town within 30 days after said improvements are occupied and the sewer system that is contemplated to be established in said town has laid a main of such sewer on a street or alley in the rear or front of the property hereinabove conveyed, it being expressly understood that the grantor is to be under no obligation to establish such sewer system, but this condition is to apply if and when such sewer system shall be established.

"Fourth. That after a sewer system shall have been laid on a street or alley in the rear or front of the property hereinabove conveyed, the said grantee, his heirs or assigns, shall not establish or allow any privy, vault, or other outhouse of similar character on said property, or any part thereof.

"Fifth. That neither said grantee nor any subsequent owner of said property, or any part thereof, shall at any time hereafter dig, erect, or allow on said land, or any part thereof, any well, cesspool, cistern, or other thing in which water may collect or from which it can be taken or used, it being the intention that the occupants of such property shall use the water exclusively from the waterworks system contemplated to be erected in said town, it being expressly understood, however, that until said waterworks is installed, any occupant of said property or any part thereof shall have the right to use, free of charge, water for domestic purposes from the well of the grantor now situated on the block bounded on the north by Pecos street of said town.

"And it is expressly stipulated and agreed that the violation of or failure to strictly keep and observe either or any of the provisions of the foregoing conditions by the owner or by any tenant, lessee, or other occupant of said property, or any part thereof, with the owner's consent, shall work as a forfeiture of the title to the particular subdivision of property, such as lot or block, as the case may be, upon or with reference to which such violation or failure to keep or observe is had or made, it being the intent that the forfeiture shall apply to and only to the particular lot or block or subdivision of property upon which such violation is had or made, and only in the event of such forfeiture the title to the property so forfeited shall immediately pass to and vest in me and my heirs for the benefit of the public schools in the town of George West, and in case such violation to keep or observe same is by the tenant or lessee such forfeiture shall apply to his interest also as if he were owner, but nothing herein shall effect or impair in any way the vendor's lien to secure such purchase-money notes or other liens that may hereafter be placed on said property, or any part thereof, and as against such lien or liens said forfeiture shall not be effective, but such forfeiture shall be made subject thereto, but in case of foreclosure of said lien or liens, the purchaser or purchasers shall take the title subject to all the terms and conditions of this instrument for acts, committed after such foreclosure, it being further expressly stipulated that a forfeiture under the terms of this instrument cannot be made effective unless I or my heirs shall enter for condition broken, it being the intention that there shall be certain evidence of any final forfeiture affecting the title to the property aforesaid.

"It is further expressly provided and there is hereby granted to each owner from time to time, of any lot or block in said town, the easement and right to have each and all of said conditions faithfully carried out and performed with reference to each and every other lot or block in said town, together with the right to bring any suit or take out any legal process that may be proper to enforce the performance thereof, it being the intention to hereby attach to each lot in said town, without reference to when it was sold, the right or easement to have said conditions strictly complied with and such right to exist in the owner of each lot as to all other lots in said town, whether owned by me, my heirs or assigns, or others, the object of said conditions being mainly to promote the peace and health of the community, but the right to forfeit such title shall only exist in the grantor, or his heirs, as above specified, but the warranty hereinabove expressed is not to be construed as extending to the easements and right granted in this paragraph.

"It is agreed that nothing herein shall be so construed as to prohibit or interfere with the erection, by the person or company erecting said waterworks systems, of a cistern or standpipe or other receptacle for water for distribution in connection with said waterworks system, for said town.

"It is further agreed that no forfeiture to title can be effected under the terms of this instrument until I or my heirs shall have first given 30 days' written notice of intention to forfeit unless the said conditions are complied with.

"It is expressly provided that no forfeiture of title can be had for failure to comply with either of said 'third,' 'fourth,' or 'fifth' conditions unless and until the party or parties operating the sewer system and water system establish reasonable rates, or until rates are

established by the authorities having power to establish such rates from time to time under the law.

"Witness my signature this 26th day of February, 1915.                    Geo. W. West."

It is shown that West originally owned all the land on which the town of George West is located, and that he laid off said town into streets, alleys, blocks, and lots, by map, and placed said map on record in said county, and by said instrument dedicated and granted the streets and alleys of said town to the public, but limited such grant and dedication by reserving in grantor, West, the right to use such streets and alleys exclusively for the purpose of establishing such utilities as sewers, waterworks, telephone, telegraph, and electric light systems. West also reserved the right to convey these exclusive rights reserved in said streets and alleys to others. The lots are all sold by this recorded map.

It is shown that in 1914 West installed the two systems adequate to supply the needs of a town of from 3,000 to 5,000 inhabitants, when the inhabitants of the town at that time amounted to about 100. It seems that some of the lot owners purchased their lots before the systems were installed and some afterwards. It seems that the two systems cost about $70,000.

It is shown that while West personally owned the waterworks and sewer systems, he never charged anything for the service. In August, 1916, he conveyed the two systems to the two corporations, respectively. The two corporations began charging rates when, or soon after, the properties were conveyed to them. The first rate fixed was $1.75 minimum. This rate was raised in September, 1918, to $2.50 for water and meter, and $1 for sewer service. In March, 1920, it was raised to $2.75 for water and meter, and $1.50 for sewer service. On August 1, 1920, it was raised to $4.50 for water and meter, and $1.75 for sewer. In July, 1921, the minimum rate complained of, $5.50 for water and meter, and $2.50 for sewer, was promulgated by the companies. The suit then followed. The facts are conclusive that the properties have been operated at all times at a loss, and there is no hope that they can be operated at a profit on the investment.

An injunction was issued when the suit was filed, and soon thereafter the properties were placed in the hands of a receiver; both these proceedings being had without notice to the defendants.

On a final trial in the district court without the intervention of a jury, judgment was rendered in favor of the plaintiffs establishing easements in favor of the lots in the water plant, and the sewer system, fixing a rate and directing that the plaintiffs take possession of the properties from the defendants and operate the same at such rates so fixed by the

court, the decreeing portion of said judgment being as follows:

"It is therefore ordered, adjudged, and decreed by the court that the plaintiffs Joe Probst, I. J. Dowd, Ben S. Brown, and M. G. Bartlett, each individually in respect to his said several lots in the town of George West, do have and recover of and from the defendant George W. West and of and from George West Water & Light Company, a corporation, and the George West Sewer Company, a corporation, the right of easement attached to their said several lots as a dominant estate to take and have and use water from said above-described water and sewer plant for domestic and general purposes at the rate of charge hereinbefore fixed, not exceeding $2.75, and 50 cents for each thousand gallons in excess of the minimum for 2,000 gallons, so long as said water and sewer plant systems are operated by the defendant George W. West or by the said defendant corporations or their assigns or agents, and that the receiver hereinbefore appointed, J. R. Secrest, or any successor to him as such, shall deliver and surrender to the said defendants said entire water and sewer systems upon demand by said defendants at any time within twenty (20) days from the adjournment of this term of the court, but that until such demand and surrender the said J. R. Secrest, as receiver, shall continue to operate said water and sewer plant systems, care for and control the same, subject to the orders of this court, and to collect and receive the said water and sewerage rates hereinabove specified, and the said receiver shall have authority to deny to plaintiffs or any other consumer such water supply and service unless said water rate is paid or tendered for all water used for each and every month and before the tenth day after the first day of each and every month such service is given, and the said receiver is hereby authorized and directed, when so acting, to collect from each and every consumer from and after his appointment, heretofore made, for all arrears due at the rate of $2.75 per month, and said rate in excess, and to that end he may demand the same and bring and prosecute any suit necessary therefor; and said receivership is now continued in force under the terms herein specified, pending the appeal herein, if any shall be taken by either party, and a supersedeas bond shall be given on such appeal, as required by law, to suspend the judgment of this court; but if such supersedeas bond shall not be given and in the event such property shall not be surrendered to the defendant George W. West and the defendant corporations under the terms hereinbefore recited, then such receiver shall report to the next regular term and each succeeding term of this court all of his actions taken in the premises, all receipts and disbursements, expenses, and the status and condition of the property at that time, to the end that he may be finally discharged.

"It is further ordered, adjudged, and decreed by the court that upon the termination of the receivership, as herein specified, or in the event of either of said defendants executing an appeal and supersedeas bond and demanding possession of said property, that should said defendant George W. West and the two defendant corporations, or some one of said defendants, fail or refuse to operate said plant for

the supply of water and sewerage service to the consumers in the town of George West, then and in that event the plaintiffs Joe Probst, I. J. Dowd, Ben S. Brown, and M. G. Bartlett may peaceably enter upon the said servient estate, take possession thereof, and operate the same for their own use and benefit, and for all other consumers of water in said town of George West, by such means as they may devise and at their own expense, and take over, use, and care for said property only in such manner as to retain the uses of the said easements aforesaid, and to charge for service not exceeding the above specified rate. And it is further ordered, adjudged, and decreed that, should the named plaintiffs operate said plant, the same shall be so operated for the benefit of all the consumers of water and sewerage service in the town of George West at a uniform rate and in accordance with the regulations hereinbefore pronounced regarding said service, and that they may so continue to so operate, use, and enjoy the same until such time as that the defendants George W. West, the George West Water & Light Company, and the George West Sewer Company, or some one of them, shall, by action brought in a court of competent jurisdiction, establish their ability and right to take over, control, and operate said plant.

"It is further ordered, adjudged, and decreed by the court that the defendants George W. West, the George West Water & Light Company, and the George West Sewer Company, each corporations, be and the same are hereby perpetually restrained forever enjoined from removing, injuring, or in any manner impairing the said uses of said property, and that they, said defendants, and each of them, shall be and are hereby restrained from removing and taking away from its present location any of the parts of said water and sewerage plant or anything or things necessary and heretofore used in the operation thereof for the distribution of the water supply to the consumers of the town of George West.

"It is further ordered, adjudged, and decreed by the court that in the event all or either of the defendants George W. West, George West Water & Light Company and the George West Sewer Company, corporations, shall undertake to control and operate said plants, and so long as they shall do so as hereinbefore provided, they and each of them are hereby enjoined from shutting off or denying water supply and sewerage service to any consumer, including the four named plaintiffs, when such consumer shall pay the rate herein established.

"It is further ordered, adjudged, and decreed that the plaintiffs shall have all necessary writs and processes to enforce this judgment, and that plaintiffs shall have and do hereby have and recover all costs incurred in the prosecution of this suit of and from the defendants George W. West, George West Water & Light Company, and the George West Sewer Company, the last two named corporations."

The case was appealed by the defendants West et al., to the Court of Civil Appeals for the Fourth District, which court reversed the judgment of the district court, but rendered a judgment that was not satisfactory to either party, and each sued out a writ of error to this court. Both writs were granted.

The opinion of the Court of Civil Appeals is found at 251 S. W. 289, and fairly states the issues of the case, but we have made the foregoing additional statement in order that this opinion may be better understood.

We are confronted at the threshold of this case with two instruments filed for the first time in this court on September 16, 1927, signed by L. A. Rizer, as attorney for Joe Probst et al., all the named plaintiffs in the trial court, and Denman, Franklin, and Denman, as attorneys for West et al., the defendants in the district court.

The first paper is as follows:

"Now come all parties to this cause and respectfully represent to the court that they have agreed and do hereby agree upon the final distribution of this cause as follows:

"They agree that the Supreme Court may enter a judgment finally disposing of the cause as per form of judgment hereto attached, approved by the parties by their attorneys herein; or, if for any reason said agreed judgment cannot be entered in the Supreme Court, that judgment be entered by the Supreme Court reversing the judgment of the Courts of Civil Appeals and the district court and remanding the cause to the district court of Live Oak county so such agreed judgment may be entered in that court.

"It is further agreed that the receivership of the properties may be dismissed either before or at the time of final judgment."

Appended to the foregoing is the following:

"On this —— day of ——, 1927, the above numbered and entitled cause coming on for hearing, there came the parties and presented their agreement filed herein to the effect that the following agreed judgment may be entered:

"It appearing from said agreement that the defendants George West Water & Light Company and George West Sewer Company hold the title to the water and light and sewer systems, subject only to the ordinary rights and duties of public service utilities imposed by law, it is ordered, adjudged, and decreed that the prayer in plaintiff's petition that the systems be declared subject to an easement appurtenant to the town lots be and the same is hereby denied, and that all other relief prayed for in plaintiff's petition is denied.

"All costs herein are adjudged one-half against the plaintiffs and one-half against defendants, for which execution may issue."

[1] An examination of the instruments discloses that Probst et al., the actually named plaintiffs, attempt to agree to a judgment which disposes of the entire case, and settles by agreed judgment the rights of themselves, the named plaintiffs, and also settles the rights of all the other lot owners not named, but on whose behalf this suit is also expressly brought. The four named plaintiffs have expressly brought this suit on behalf of themselves and all other lot owners of said town similarly situated. Said other lot owners, who are certainly parties to this suit by representation, have filed a protest against

this court carrying out the above agreement or entering such agreed judgment. We are of the opinion that the four named plaintiffs have the undoubted right to compromise and settle their suit against West et al., in so far as they are concerned; that the remaining lot owners on whose behalf this suit is also brought, or such of them as desire to do so, have the right to continue to prosecute the same, in so far as their rights are concerned, in the name of the four named plaintiffs, or in their own names, just as though no agreement had been made by the four named plaintiffs. Of course, in case a judgment is entered disposing of the case as to the named plaintiffs, the other parties who continue to prosecute the suit may be required to enter into such new bonds as the law provides for. However, as this suit will be remanded to the district court for further proceedings, no judgment should be entered by this court on said agreement. The district court can enter such judgment as is justified by said agreement and in conformity to this opinion. Seiter v. Smith, 105 Tex. 205, 147 S. W. 226.

This brings us to a consideration of the case on its merits.

The plaintiffs in this case will hereinafter be designated as lot owners, and the defendants in the district court as West.

We are of the opinion that if the lot owners, which include the plaintiffs and others similarly situated, have any easements in the sewer system or waterworks system, such easements must be asserted and sustained under the provisions and terms of the deed, viewed in the light of the surrounding circumstances, which include the reservation in the street and the promises and representations of West, and if such rights exist by virtue of the deed they must be asserted principally under paragraphs numbered 3, 4, and 5.

[2] We are further of the opinion that the paragraphs referred to, viewed in the light of the surrounding circumstances, and the balance of the deed, do not, and cannot, under well-known rules of legal construction, be so construed as to create an easement in either the sewer system or the waterworks for the following reasons: First, because the deed, which constitutes the contract, viewed in the light of the other testimony and the surrounding conditions, together with the reservation in the streets, does not grant an express easement, and an implied easement cannot in law exist, if it is of such a nature as to require the act of man to perfect or indicate its use; second, because the very terms of the instrument and the character and purpose of the properties will not, in law, permit of such construction; and, third, because there is no necessity for the easement to exist in order that the owners may enjoy the land conveyed to them by said deeds.

Addressing ourselves to the first proposition, it is certainly clear that the deed does not, in any manner, grant an express easement in favor of the several lots, in either the sewer system or the waterworks system. The findings of fact by the trial court, including the deeds themselves, the reservations in the streets, the advertisements, and the oral statements of the defendant and his agents, are not sufficient in law to create an express easement in favor of the several lots or the lot owners in either of the two systems. We have carefully examined the briefs of the parties and the findings of fact by the trial court, together with the record and the uniform deeds of conveyance, and we are unable to find any tangible evidence in the record which can be construed as granting either an implied or express easement in the properties.

The waterworks system and the sewer system, as shown by the undisputed evidence, consist of pipes running through the town, mains, faucets, fire hydrants, plumbing, pumping station, elevated water tank, machinery, tools, appliances, disposal tanks, and all the various paraphernalia that go to make up such systems. The record shows indisputably, and it is the common knowledge of mankind, that the use of such systems requires continuous, expert, and careful operation and supervision by experienced engineers and workmen, just as any other business concern whose operation requires constant care and attention. In other words, the properties involved in which an easement is sought to be fixed are going business concerns, which, in addition to requiring persons to supervise and operate, require constant and vigilant care and attention and a certain amount of operating capital. It consists mostly of property which, in its nature, is personalty, and is largely composed of appliances and machinery that have to be renewed, kept up, repaired, and constantly supervised and cared for at all times. It cannot be seriously contended that property of this character is subject to an easement created by implication, or that it is such property that its operation does not require the act of man to perfect or indicate its use.

In Howell v. Estes, 71 Tex. 690, 694, 12 S. W. 62, 63, our Supreme Court, speaking through Judge Gaines, says:

"We think the weight of authority sustains the proposition that if an improvement constructed over, under or upon one parcel of land for the convenient use and enjoyment of another contiguous parcel by the owner of both, be open and usable and permanent in its character, and of *such a nature as does not require the act of man to perfect or indicate its use,* and the owner alienate the latter, the use of such improvement will pass as an easement, although it may not be absolutely necessary to the enjoyment of the estate conveyed (Lampman v. Milks, 21 N. Y. 505, and authorities there cited; Ewart v. Cochrane, 4 McQueen, 123; [Kieffer] Keiffer v. Imhoff, 26 Penn. State, 438; Kilgour v. Aschom [Ashcom] 5 Horris

& J. [Md.] 82; Seymour v. Lewis, 13 N. J. Eq. 439 [78 Am. Dec. 108]; Elliott v. Rhett [5] 8 Rich. Law, S. C. 405 [57 Am. Dec. 750]; see, also, Freeman's notes to same case, 57 Am. Dec. 762, and authorities cited)." (Italics ours.)

In West v. Giesen, 242 S. W. 312, the Court of Civil Appeals for the Third District, speaking through Chief Justice Key, cites with approval the holding in the case of Howell v. Estes, and says:

"In that case it will be noted that one of the essentials of an implied easement is that the improvement is so constructed that it is open, usable, and permanent, and of such a nature as does not require the act of man to perfect or indicate its use. In other words, if, in order for the grantee to obtain the benefit of the alleged easement, the grantor, or someone acting for him, will have to perform a service, then the doctrine of implied easement does not exist."

The above authorities have never been questioned or overruled in this state, so far as we have been able to ascertain, and they certainly and clearly announce the settled law of this state to be that an easement cannot exist by implication, unless the improvement is so constructed that it is open, usable, and permanent, and of such a nature as does not require the act of man to perfect or indicate its use.

[3] The deeds in question cannot, by any construction of law, be construed to convey an express easement in the property, and, inasmuch as the record is conclusive and overwhelming, and it is the common knowledge of mankind that the properties in question, that is, both the waterworks and the sewer system, require the act of man to perfect and indicate their uses, then they are not such properties as, in their very natures, will support an easement by implication.

[4] As to the second proposition, to the effect that the easement is created by virtue of the contract, based upon the promises and representations made at the time and before the purchase of the lots, and at the time of the removal of the county seat, sufficient to create easements, let us carefully examine the record. A careful examination of the deed in the light of the surrounding circumstances will not even remotely fix an easement on the properties in question, but, on the contrary, the deed absolutely negatives such a construction.

From the deed and the entire record it is shown that West has never made any contract that can be construed as the granting of either an express or implied easement or interest in these properties. Viewed in the light of the deed and all the surrounding circumstances, including the promises and representations, considered in their most favorable light from the standpoint of the lot owners, West undertook and contracted to perform a public duty, that is, to supply water and sewerage to the public generally, which, of course, included the lot owners, and the devotion of the properties to the public use excludes any implication of private easements in favor of the several lots or the lot owners and of corresponding servitudes in the plants because of incompatibility between the two. The legal effect and express purpose of the deed itself is to devote the property to the public use and not to private easements, as it expressly states:

"It is expressly provided that no forfeiture of title can be had for failure to comply with either of said 'third,' 'fourth,' or 'fifth' conditions unless and until the party or parties operating the sewer system and water system establish reasonable rates, or until rates are established by the authorities having power to establish such rates from time to time under the law."

This quoted section of the deed convinces us that it was contemplated that the sewer system and waterworks were to be devoted to the public use, as it provides that the rates must be reasonable and can be fixed by the authorities having power to establish them. There is no *authority* in this state with power to fix rates to be charged by concerns of this kind except the governing bodies of cities and towns duly incorporated, and such governing bodies would only have the right to fix rates if the properties were public utilities. The part of the deed quoted contemplates that rates may be fixed, in the event of the incorporation of the town by the authorities having such power. This part of the deed is susceptible of no other construction. Certainly, no governing body would attempt to fix rates to be charged for a private easement.

[5] It being shown that West assumed a public duty and in law dedicated the properties to such public duty, such public duty would be to the entire public of the town, and not alone to such persons who should purchase lots from him, with the stated restrictions and conditions in their deeds, and if the property were dedicated to the public, such a dedication would, as before stated, be incompatible with any conception of a private interest or easement in favor of the several lots in these public utilities.

[6] In this connection we wish to state that we are of the opinion that, should the utilities be withdrawn from public use, the lot owners would have a perpetual easement and right to use water for domestic purposes, from the well mentioned in the deed, as it provides:

"It being expressly understood, however, that until said waterworks is installed, any occupant of said property, or any part thereof shall have the right to use, free of charge, water for domestic purposes from the well of the grantor now situated on the block bounded on the north by Pecos street of said town."

[7] This brings us to a consideration of the third question; that is, whether an easement is created by virtue of necessity. We think that the facts and the deeds create no such necessity. Certainly the conditions in the deed, together with the rights reserved by West in the streets, for the purpose of carrying out the conditions and provisions of sections 3, 4, and 5 in the deed, would become absolutely inoperative on failure of West to build or operate such systems. The terms of the deed lead to this conclusion, and further, in the absence of an opportunity to carry out such provisions, they become inoperative. Jackson v. Stevenson, 156 Mass. 496, 31 N. E. 691, 32 Am. St. Rep. 479; Ladd v. City of Boston, 151 Mass. 585, 24 N. E. 858, 21 Am. St. Rep. 498.

In Jackson v. Stevenson, supra, it is shown that the city of Boston owned a parcel of land divided into lots and conveyed lots to various parties under deeds containing restrictions as to the character of buildings, etc., to be erected on the lots, in order to keep the lots suitable for residence purposes. Suit was brought by some of the lot owners to restrain uses of some of the lots contrary to the restrictions in the deeds. The Supreme Court of Massachusetts, speaking through Justice Barker, says:

"Assuming these points in favor of the plaintiffs, we are nevertheless of the opinion that an injunction should not be granted in the present case. It is evident that the purpose of the restrictions as a whole was to make the locality a suitable one for residences; and that owing to the general growth of the city, and the present use of the whole neighborhood for business, this purpose can no longer be accomplished. If all the restrictions imposed in the deeds should be rigidly enforced, it would not restore to the locality its residential character, but would merely lessen the value of every lot for business purposes. It would be oppressive and inequitable to give effect to the restrictions; and since the changed condition of the locality has resulted from other causes than their breach, to enforce them in this instance could have no other effect than to harass and injure the defendant, without effecting the purpose for which the restrictions were originally made: Duke of Bedford v. British Museum, 2 Mylne & K. 552; German v. Chapman, 7 Ch. Div. 271, 279; Sayers v. Collyer, 24 Ch. Div. 180, 187; Trustees, etc., v. Thacher, 87 N. Y. 311, 41 Am. Rep. 365; Starkie v. Richmond, 155 Mass. 188 [29 N. E. 770]."

The note on the case of Jackson v. Stevenson, supra, 32 Am. St. Rep. at p. 482, says:

"Restrictive Covenants—When will not be enforced.—See extended note to Ladd v. Boston, 21 Am. St. Rep. 498; note to Brewer v. Marshall, 97 Am. Dec. 686; extended note to Morse v. Garner, 47 Am. Dec. 574, 575. A restrictive covenant will not be enforced if the land restricted cannot be profitably used under the covenant and it does not fulfill the purpose for which it was created: Page v. Murray, 46

N. J. Eq. 325 [19 A. 11]; Trustees, etc., v. Thacher, 87 N. Y. 311, 41 Am. Rep. 365."

Under the terms, conditions, and restrictions of the deed, such terms, conditions, and restrictions can only apply when the conditions under which they operate will permit, and when the situation intended and expected to be created by the conditions in the deed have become impracticable, on the failure to furnish the sewer system and the waterworks system, or the failure to furnish same at reasonable rates, then the conditions and restrictions in the deed and the reservations for the exclusive use of the streets for sewer and waterworks purposes become inoperative and of no force, and should be treated just as though they had never been written, and the owners of said lots are freed from these conditions and restrictions and have the right to provide themselves with water and sewerage in the usual and ordinary manner, and further, have the right to use said streets for said purposes.

We do not understand that the lot owners contend that they have the right to compel West or the two corporations to operate the waterworks or the sewer system, but they do contend that if West or said corporations fail or refuse to do so, or if they charge unreasonable rates, they have the right to take charge of the properties and operate the same for the benefit of the lot owners at reasonable rates. We know of no authority that would uphold such a procedure. In fact, we are fully convinced that such a procedure by the four named plaintiffs or any great number of persons, each asserting an easement or right in favor of his lot, not joint, but several, would be practically impossible for any extended length of time. Should said lot owners undertake to operate said properties, they would have to do so as partners, and the right to so operate would cease as soon as they ceased to be lot owners. Certainly, no statements in the deed or any other facts found by the trial court would admit of such a procedure.

[8-12] Under our view of the law as applied to the deed and the findings of fact by the trial court, West and the corporations holding under him assumed the duties and obligations of those who operate public utilities, and as such they have the right to discontinue their operation. San Antonio Street Ry. Co. v. State, 90 Tex. 520, 39 S. W. 926, 35 L. R. A. 662, 59 Am. St. Rep. 834; East Ohio Gas Co. v. Akron, 81 Ohio St. 33, 90 N. E. 40, 26 L. R. A. (N. S.) 92, 18 Ann. Cas. 332; Weems Steamboat Co. v. People's Co., 214 U. S. 345, 29 S. Ct. 661, 53 L. Ed. 1024, 16 Ann. Cas. 1222; Laighton v. City of Carthage (C. C. A.) 175 F. 145. However, under the facts of this case, equity would require that the patrons of the two companies be given a reasonable time in which to provide themselves with water and sewerage otherwise, or a substi-

tute for such sewerage. Wyman on Public Service Corporations, vol. 1, p. 275, par. 316; Bienville Water Supply Co. v. Mobile, 112 Ala. 260, 20 So. 742, 33 L. R. A. 59, 57 Am. St. Rep. 28; Seattle Electric Co. v. Snoqualmie Falls Power Co., 40 Wash. 380, 82 P. 713, 1 L. R. A. (N. S.) 1032 (1905). What is reasonable notice in a particular case depends upon the character of the business. A water company can abandon its service only after a long enough period to provide a new supply, and a sewer company only after a long enough period has been allowed to provide other sewerage, or in some cases a substitute therefor. Wyman on Public Service Corporations, vol. 1, p. 276, par. 317. In this case the district court should by appropriate orders or by receivership, if necessary, provide for reasonable notices in case the utilities, or either of them, are withdrawn from public use.

[13-16] This brings us to a consideration of what would be reasonable rates, and how, under the facts and circumstances of this case, reasonable rates should be fixed. A water company is entitled to earn a sufficient sum annually to provide not only for current repairs, but for making good the depreciation and replacing the parts of the property when they come to the end of their life, and pay a fair return on capital judiciously expended in the construction of the plant. 27 R. C. L. 1444, par. 61. In determining the value of the plant, the reasonable value of the property at the time it is being used for the public service is the basis for determining whether rates fixed are reasonable. The investment on which the company is entitled to base its compensation in determining the sufficiency of rates cannot include property not at present actually employed, however useful it may have been in the past or may yet be in the future. The value of personal property should be considered if it represents an investment reasonably necessary for the carrying on of the business successfully. 27 R. C. L. 1444, par. 62. The same rules would apply to a sewer company.

[17, 18] It follows from the above that, as a general rule of law, a public service company is entitled to charge and collect a rate that will pay the cost of operation, provide for its upkeep and for depreciation and replacements and a reasonable return on the investment. By "investment" is meant the present value of the active properties in use and reasonably proper and necessary for the service to be performed. It therefore follows, we think, that companies of this kind would not have the right to erect waterworks or a sewer system extensive enough to supply and serve a city or town of from 3,000 to 5,000 inhabitants, when it only has about 50 patrons, and charge that limited number a sufficient rate to pay returns on a plant of a suf-

ficient capacity and investment for a city of the size above indicated. In such a case the invested capital would not be judiciously expended in the construction of the plant. The rates charged by these companies should not exceed what would be reasonable had the money used to build them been judiciously expended. We know of no law which empowers the district court to fix rates in a case of this kind. If the rates fixed by the companies are unreasonable, the court can enjoin their collection, and the court can fix rates to be charged by its own receiver.

We recommend that the judgments of the Court of Civil Appeals and of the district court be both reversed, and that this cause be remanded to the district court for further proceedings in accordance with this opinion. We further recommend that each party be adjudged to pay one-half the costs incurred up to date in the Supreme Court, the Court of Civil Appeals, and the district court.

GREENWOOD and PIERSON, JJ. Judgments of the district court and Court of Civil Appeals both reversed, and cause remanded to the district court, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.