## HARDING et al. v. WATSON et al.

### No. 9910.

Court of Civil Appeals of Texas. San Antonio.

Feb. 26, 1936.

Jesse G. Foster, of Raymondville, for appellants.

Crane & Glarner, of Raymondville, for appellees.

SMITH, Chief Justice.

W. A. Harding and Rio Grande Properties Company, owners of the townsite and water system in the town of Lasara, in Willacy county, brought this action for a temporary injunction against Mrs. A. M. Watson and three other citizens of the town. From an adverse judgment, Harding and the Properties Company have appealed. The parties will be herein designated plaintiffs and defendants, respectively, as in the court below.

In 1926 Harding-Gill Company laid out the future town of Lasara. Among the improvements constructed by the company was a water system, at a cost of $7,000, for supplying water to the inhabitants of the town. W. A. Harding, succeeding to the ownership of the townsite, employed an auctioneer, and put on a sale of town lots, including 40-acre blocks in the outskirts, and the usual business and residence lots in the central portion, of the proposed town.

It appears from the record that the water system has been operated in a somewhat haphazard, makeshift manner. The plaintiffs seem to have operated it for a while; for a while, patrons of the system, including the four defendants, operated it, going to the expense, even, of replacing units and parts of the system. Then, it appears, plaintiffs resumed operation of the system, placing the management in three trustees, appointed by them. Under that management, a schedule of rates was set up. This rate was applied to the four defendants herein, along with others in the same class. Defendants failed or refused to pay those charges, and are alleged to have become delinquent for several months' rentals. The plaintiffs, being unable to collect these back rents, undertook to cut off the supply to Mrs. Watson, one of the defendants. When plaintiffs' agents went to the home of Mrs. Watson and undertook to disconnect the water from her premises, she and others, according to plaintiffs' contention, stopped the attempt, vi et armis. Whereupon plaintiffs brought this action to enjoin defendants from thus interfering with the operation of the water system. Defendants not only contested plaintiffs' suit, but prayed, in turn, that they be permitted to operate the water system, and that plaintiffs be enjoined "from in any way interfering with these defendants in the operation of said water system and from in any way attempting to set rates or collect the same or collect money for such system, except such rights as plaintiffs may have by virtue of being an owner in and to property within the town of Lasara, which rights these defendants acknowledge, if the plaintiffs own any property within the town, and to that extent only, and that this injunction, upon final hearing, be made perpetual. * * *"

After notice, a full hearing was had, apparently in vacation, at the conclusion of which the trial judge refused to grant the temporary injunction or any other relief prayed for by plaintiffs, and, on the other hand, granted the prayer of defendants, that plaintiffs be restrained from "in any way interfering with the defendants in the operation of the water system in the town of Lasara and from in any way attempting to set rates or to collect the same for such system until appearance day of the regular term of this Court, November 18, 1935, except that the plaintiffs shall have the right to take water under the same conditions as the defendants, upon their payment of their pro rata part of the up-keep of the well and the expenses of pumping the water, and upon their payment of their pro rata part of the expenses of the windmill and other machinery necessary for the pumping and distribution of the water and that this injunction shall cease upon appearance day of this Court, unless it is then by this Court made perpetual."

The plaintiffs excepted to the judgment, gave notice of appeal therefrom, and filed an appeal bond by which their appeal was restricted, by implication, to that part of the judgment denying to them the relief they had prayed for.

■ The appeal does not involve the ruling of the trial judge granting defendants the right to control and operate the water system, and restraining plaintiffs from interfering with defendants in the exercise of that right. This is true, first, because the appeal bond given by plaintiffs does not run to those provisions in the judgment; and, second, because, by the terms of the judgment, those provisions were made effective only until November 18, 1935, to which date the writ was made returnable, thereby rendering the question moot, since that date has intervened.

The appeal therefore presents the sole question of whether, under the pleadings and evidence, plaintiffs showed themselves to be entitled to a temporary injunction restraining defendants "from diverting, molesting, or in any manner interfering with these plaintiffs in the maintenance, operation, and distribution of said water system, or doing any act tending in any way to interfere with these plaintiffs in the management, control, and operation of said water system."

Defendants' answer and cross-petition for injunction is quite too lengthy to warrant reproduction, or even a full summary, here. It is deemed sufficient to say that defendants alleged, in effect, that when plaintiffs put on public sales of town lots they represented, publicly and privately, that pur-

chasers of the 25-foot lots would "have an interest" in the waterworks plant, and a perpetual right to the free use of water from the water system, except to contribute proportionately to the actual cost of keeping the system in "running order"; that defendants each purchased and improved residence lots in reliance upon such representation; that plaintiffs' said representation and defendants' purchase of the lots thereunder constituted a contract between the parties, whereby defendants and other purchasers of lots acquired a perpetual easement in and ownership of the water system, and the correlated right to operate that system, and fix the charges for the use of water therefrom, and that plaintiffs' interest in the system was no greater than that of a lot owner; that defendants and others in their class, as individual lot owners, had from time to time at their own expense repaired the water plant, and replaced worn-out parts thereof, and operated and fixed the water rates to users, and that by reason of all the recited facts were now the owners of a controlling easement in the system, and entitled to control and manage it, and fix the water rates they are to pay for its upkeep, to the exclusion of the two plaintiffs, except as individual lot owners. It is conceded by defendants that as they purchased their lots they took conveyances thereof free of any reference to or inclusion of the alleged parol representations or promises concerning water rights, upon which subject those instruments were silent. The record shows further that the principal defendant, Mrs. Watson, did not purchase her lot directly from plaintiffs, but from one of their vendees. It is also conceded that plaintiffs are the owners in fee simple of the realty upon which the water plant, including well, tank, and other properties, are located. And so is it conceded that plaintiffs themselves, at their own expense, of $7,000, constructed the plant, and laid and put in operation water mains throughout the town, and have conveyed away no part of or interest in the realty or water system situated thereon.

It may be said, generally, that there was evidence to support the allegations of fact embraced in defendants' answer and cross-petition for injunctive relief; and the implied findings of the trial judge thereon.

In their pleadings, defendants asserted no claim to the easement in the water system by reason of prescription or by virtue of any written conveyance or contract. They simply claim the easement by reason of the alleged parol representations and promises made to the public by the owners of the townsite, including the water system, in their campaign for the sale of town lots; and that by virtue of this easement defendants, along with other purchasers of such lots, have the right to control and operate the water system, and fix the charges to consumers, including themselves and plaintiffs, for the use of water from the system; that plaintiffs have no other rights in or to the water system than those claimed by defendants, as individual lot owners.

We are of the opinion that there is no legal merit in defendants' contentions. By reason of its inherent nature, a waterworks system, designed and operated for the purpose of supplying water to the public, is not subject to the character of easement asserted by defendants. It is a matter of common knowledge that a public utility, such as a waterworks system, requires the constant efforts of man to perfect, repair, reconstruct, replace, extend, maintain, and operate the venture, and the law will never imply an easement in such a system in favor of particular individual members of the public whereby they may acquire special rights in or control or dominion over the system, to the exclusion of any other member of the public, and certainly, in no case, over the power or authority of the builders and owners of the system. Such an easement, even though granted by express terms in deeds to purchasers of town lots, such as defendants, would be repugnant to the object of the utility, and therefore unenforceable. That being true, then certainly the easement will not be implied from mere parol promises or representations, such as relied upon by defendants in this case. West v. Probst (Tex.Com.App.) 6 S.W.(2d) 96.

In so holding, we are not unmindful of the contention of defendants that at times plaintiffs have yielded to defendants and others in their class the burden and duty of operating the system, and fixing the water rates; that defendants and other water users have at times repaired the water plant at their own expense, and the like. But these circumstances cannot be given effect to burden the system with the easement claimed by defendants, or remove the case from the rules stated above. Whatever rights defendants have acquired, or damages they have sustained, their remedies lie in other courses than the assertion of the claimed easement.

It remains only to determine if plaintiffs made out a case showing such a violation of their rights as to warrant the extra-

ordinary writ of injunction prayed for. In substance it was shown that plaintiffs' agents went to the residence of one of defendants, Mrs. Watson, for the purpose of disconnecting the private line leading from her dwelling to the main in the street, on account of her refusal to pay her current or delinquent water rents. When these agents approached the residence, Mrs. Watson and others in her behalf prohibited them from cutting off the water—"dared them" to cut it off, and the like. One of the men in the party had a shotgun in hand, but that was explained by testimony that the gun carrier just happened to be bringing the weapon home from the repair shop. The effect of the testimony was to establish the fact that Mrs. Watson refused to permit plaintiffs' agents to cut off the water supply from her premises, and prevented them from so doing. We are of the opinion that that isolated incident was not such as to warrant the sweeping injunction sought by plaintiffs, and that the record does not show the trial judge abused his discretion in refusing that relief. The action of the court in granting the temporary injunction in favor of defendants against plaintiffs is not before this court for review.

The judgment is affirmed.