**EGGLESTON v. FINCHER et al.**

No. 14606.

Court of Civil Appeals of Texas.
Fort Worth.

Jan. 28, 1944.

Rehearing Denied Feb. 25, 1944.

Clyde Thomas and Hampden Spiller, both of Fort Worth, for appellant.

Albert J. Baskin and Fred S. Dudley, both of Fort Worth, for appellees.

McDONALD, Chief Justice.

Theo Eggleston brought this suit, alleging that he was the owner of Lots 24 and 25, in Block 9, of Fairview Heights Addition to the City of Fort Worth; that plaintiff purchased said lots in 1939; that at the time of his purchase there was a water well on said lots; that plaintiff erected on the property a windmill and supplied other equipment necessary for pumping water from the well; that the windmill and other improvements cost plaintiff a large sum of money; that plaintiff has maintained and paid the expenses of the well since the erection of the windmill; that defendants occupy adjacent property, and have connected pipes with plaintiff's well, and have been using water therefrom. The petition further alleges that defendants' acts are seriously impairing the supply of water for plaintiff's use; that the windmill and equipment are becoming worn; that defendants are unable to respond in damages; and that plaintiff has no adequate remedy at law. The prayer is for an injunction restraining defendants from using water from the well, and for an order quieting plaintiff in his title to the property.

In their answer defendants allege that their father, W. R. Fincher, purchased the lots on which they live, Lots 7, 8, 9 and 10, of Block 9, of the Fairview Heights Addition, from the Mays Realty Company, in 1927; that the father later conveyed the lots to the defendant Roscoe Fincher; that the Mays Realty Company subdivided the addition in question in 1924; that at the time W. R. Fincher purchased Lots 7, 8, 9 and 10, the Mays Realty Company, as an inducement to cause W. R. Fincher to purchase said lots, entered into a parol agreement with him to the effect that there was reserved to W. R. Fincher and other purchasers of lots in said addition, the free use of water from the water well which is now claimed by plaintiff, for the use and benefit of W. R. Fincher and other purchasers of lots in said addition. Defendants allege that "such water rights included by implication the right of ingress and

egress to said water well". It is further alleged in the answer that W. R. Fincher, in reliance upon the promises and agreements made by Mays Realty Company, as aforesaid, paid the consideration for the lots, went into possession of Lots 7, 8, 9 and 10, and with the consent of Mays Realty Company made valuable and permanent improvements thereon. It is further alleged that other lots were sold by Mays Realty Company under the same inducements and agreements as were offered and made to W. R. Fincher. Defendants also allege that W. R. Fincher, after the purchase of said lots, made valuable and permanent improvements at the said water well, by erecting a pump thereon for the purpose of drawing water from the well, and by connecting a pipe to the well, and that for a period of more than ten years W. R. Fincher, the defendants, and other lot owners in the addition similarly situated have held and exercised uninterrupted rights to the free use of water from the well, and the right to use the lot upon which the well is located as a pass-way to and from the well. It is further alleged that Mays Realty Company did not sell the lots claimed by plaintiff, but that plaintiff purchased them at a tax sale for the nominal sum of $50; that plaintiff knew of the rights of defendants and other lot owners in the addition, but that none of them were made parties to the tax foreclosure proceedings. Defendants allege that it would be inequitable to deny them their rights so claimed, and that the non-enforcement of their rights would plainly amount to fraud; that in the circumstances Mays Realty Company would have been estopped from asserting exclusive dominion over the well and the lots on which it is situated, and that plaintiff, having acquired no better right than his predecessors, is likewise estopped.

Farther pleadings were filed by both parties, the details of which are not necessary to set out here.

The trial court, without a jury, denied the prayer for a permanent injunction, denied the prayer for an order quieting plaintiff's title to the property, and denied defendants a judgment on a cross-action which they had filed. Plaintiff alone has appealed.

The most that could be claimed by defendants under their pleadings would be an easement by implication. This claim can-

not be sustained, because the maintenance of the well and its equipment, the operation of the well, and the furnishing of equipment, requires the act of man to perfect or indicate the use of the easement. Claims very much like the present one were considered in West v. Giesen, Tex.Civ.App.. 242 S.W. 312, writ of error refused; West v. Probst, Tex.Com.App., 6 S.W.2d 96, holding expressly approved by the Supreme Court; and Harding v. Watson, Tex.Civ. App., 91 S.W.2d 956. The opinions in those cases are exhaustive, and demonstrate fully why an easement like that asserted by defendants in this case cannot be established in the manner claimed here. We refer to those opinions without repeating what is said in them, as authority for our holding in the case before us.

The judgment of the trial court is reversed, and judgment is here rendered in favor of appellant, ordering the issuance of the injunction prayed for, and quieting plaintiff's title to his said lots.